# EXHIBIT A

Approved, SCAO

| | | |
|---|---|---|
| | Original - Court | 2nd copy - Plaintiff |
| | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | | CASE NO. |
|---|---|---|
| **22nd** JUDICIAL DISTRICT **JUDICIAL CIRCUIT** COUNTY PROBATE | **SUMMONS** | 20-000961-NZ JUDGE CAROL KUHNKE |

Court address
101 EAST HURON STREET       ANN ARBOR, MICHIGAN 48104-1446

Court telephone no.
(734) 222-3001

Plaintiff's name(s), address(es), and telephone no(s).
MARK W. DOBRONSKI       Tel: (734) 641-2300
PO BOX 85547
WESTLAND, MI 48185-0547

v

Defendant's name(s), address(es), and telephone no(s).
MANASSEH JORDAN MINISTRIES, INC.;
ZOE MINISTRIES INC;
KINGDOM MINISTRIES CHURCH, INC.,
MJ MINISTRIES SPREADING THE GOSPEL, INC.,
MJ MINISTRIES LLC;   et al.

Plaintiff's attorney, bar no., address, and telephone no.
PRO SE

SEE SUMMONS PAGES 2-4 FOR ALL DEFENDANTS'
NAMES AND ADDRESSES

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☑ this court,  ☐ _____ Court, where

it was given case number ___19-301-CZ___ and assigned to Judge CAROL KUHNKE .

The action ☐ remains ☑ is no longer pending.

Summons section completed by court clerk.                **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file **a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| | 12-23-2020 | /s/ Kim Plumb, 9/23/2020 |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**                MCR 1.109(D), MCR 2.104(A), MCR 2.103, MCR 2.104, MCR 2.105

FILED IN Washtenaw County Trial Court; 9/23/2020 3:02 PM

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT

**MARK W. DOBRONSKI,**

        Plaintiff,

v.

**MANSSEH JORDAN MINISTRIES, INC.,** *et al.*

        Defendants.

Case No.  20-000961-NZ

Honorable Carol Kuhnke,
Circuit Judge

---

### <u>SUMMONS</u>
### <u>(Page 2)</u>

<u>Defendants' Names and Addresses</u>

MANASSEH JORDAN MINISTRIES, INC.
310 Riverside Drive
New York, New York 10025

ZOE MINISTRIES, INC.
310 Riverside Drive
New York, New York 10025

KINGDOM MINISTRIES CHURCH, INC.
194 Jonesboro Road
Jonesboro, Georgia 30236

MJ MINISTRIES SPREADING THE
GOSPEL, INC.
1735 Defoor Place Northwest, Suite D1
Atlanta, Georgia 30333

MJ MINISTRIES LLC
279 West 117th Street, Apartment 1Q
New York, New York 10026

SERVING HANDS COMMUNITY
DEVELOPMENT CORPORATION
500 Northwest 2nd Avenue, Suite 11335
Miami, Florida 33101

VESSELS OF OIL MINISTRIES, INC.
265 Old Mill Court
Fayetteville, Georgia 30214

WORSHIP CENTER OF ATLANTA, INC.
1735 Defoor Place Northwest
Atlanta, Georgia 30318

CARLINGTON MANAGEMENT
ASSOCIATES, INC.
279 West 117th Street, Apartment 1Q
New York, New York 10026

YTEL, INC.
94 Icon
Foothill Ranch, California 92610

RAS REALTY MANAGEMENT LLC
500 Northwest 2nd Avenue, Suite 11335
Miami, Florida 33101

SANTANDER HOLDINGS LLC
500 Northwest 2nd Avenue, Suite 11335
Miami, Florida 33101

# STATE OF MICHIGAN
## IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT

**MARK W. DOBRONSKI,**

      Plaintiff,

v.

**MANSSEH JORDAN MINISTRIES, INC.,** *et al.*

      Defendants.

Case No.  20-000961-NZ

Honorable Carol Kuhnke,
Circuit Judge

---

## SUMMONS
## (Page 3)

### Defendants' Names and Addresses

CARLINGTON REALTY, LLC
500 Northwest 2nd Avenue, Suite 11335
Miami, Florida 33101

VIRTUAL GLOBAL CONSULTANT
GROUP LLC
26-40 Church Street, # 22
South Orange, New Jersey 07079

YAKIM MANASSEH JORDAN
12220 Northwest 68th Court
Parkland, Florida 33076

AARON B. JORDAN
2551 North Rock Island Road
Margate, Florida 33063

ELIJAH BERNARD JORDAN a/k/a
E. BERNARD JORDAN
1 High Meadow Road
Saddle River, New Jersey 07458

DEBRA ANN JORDAN
1 High Meadow Road
Saddle River, New Jersey 07458

CHARLIE BERRIAN
160 Old Mill Court
Fayetteville, Georgia 30214

FRANK PETER JULIANO
279 West 117th Street, Apartment 1Q
New York, New York 10026

DAVID FEW
175 Tomahawk Drive
Sharpsburg, George 30277

ROBERT ALAN SEIBEL
3019 Exeter B
Boca Raton, Florida 32434

LUTHER CLYDE MCKINSTRY III
2624 Sigsher Drive
Toledo, Ohio 43615

STEVEN SLEDGE
3623 Chimney Rock Drive
Carrollton, Texas 75007

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE 22nd JUDICIAL CIRCUIT

**MARK W. DOBRONSKI,**

        Plaintiff,

v.

**MANSSEH JORDAN MINISTRIES, INC.,** *et al.*

        Defendants.

Case No.  20-000961-NZ

Honorable Carol Kuhnke,
Circuit Judge

---

## SUMMONS
### (Page 4)

Defendants' Names and Addresses

JONOTHAN D. FOREMAN
d/b/a TECHSAVEY
24 Mountain Avenue
West Orange, New Jersey 07052

JESSE DEAN SPENCER
480 Northeast 31st Street, Unit 2202
Miami, Florida 33137

NATASHA A. CHRISTIAN
628 Santander Avenue, Apartment 3
Coral Gables, Florida 33534

WENDY EKUA DACRUZ
16570 Baylis Street
Detroit, Michigan 48221

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE 22ND JUDICIAL CIRCUIT

**MARK W. DOBRONSKI,**
an individual,

                Plaintiff,

v.

**MANASSEH JORDAN MINISTRIES, INC.,**
a New York religious corporation;

**ZOE MINISTRIES INC.,**
A New York religious corporation;

**KINGDOM MINISTRIES CHURCH, INC.,**
a Georgia nonprofit corporation;

**MJ MINISTRIES SPREADING THE GOSPEL, INC.,**
a Georgia nonprofit corporation;

**MJ MINISTRIES LLC,**
a New York limited liability company;

**SERVING HANDS COMMUNITY
DEVELOPMENT CORPORATION,**
a Florida nonprofit corporation;

**VESSELS OF OIL MINISTRIES, INC.,**
a Georgia nonprofit corporation;

**WORSHIP CENTER OF ATLANTA INC.,**
a Georgia nonprofit corporation;

**CARLINGTON MANAGEMENT
ASSOCIATES, INC.,**
a New York corporation;

**YTEL, INC.,**
a California corporation;

Case No. 20-000961-NZ

JUDGE CAROL
KUHNKE

FILED IN Washtenaw County Trial Court; 9/23/2020 3:02 PM

**RAS REALTY MANAGEMENT LLC,**
a Florida limited liability company;

**SANTANDER HOLDINGS LLC,**
a Florida limited liability company;

**CARLINGTON REALTY, LLC,**
a Florida limited liability company;

**VIRTUAL GLOBAL CONSULTANT GROUP LLC,**
a New Jersey limited liability company;

**YAKIM MANASSEH JORDAN,**
an individual;

**AARON B. JORDAN,**
an individual;

**ELIJAH BERNARD JORDAN**
a/k/a **E. BERNARD JORDAN,**
an individual;

**DEBRA ANN JORDAN,**
an individual;

**NAOMI D. COOK,**
an individual;

**CHARLIE BERRIAN,**
an individual;

**FRANK PETER JULIANO,**
an individual;

**DAVID FEW,**
an individual;

**ROBERT ALAN SEIBEL,**
an individual;

**LUTHER CLYDE MCKINSTRY III,**
an individual;

**STEVEN SLEDGE,**
an individual;

**JONOTHAN D. FOREMAN,**
an individual;

**JESSE DEAN SPENCER,**
an individual; and,

**NATASHA A. CHRISTIAN,**
an individual; and,

**WENDY EKUA DACRUZ,**
an individual;

       Defendants.

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

---

## COMPLAINT

 Plaintiff, Mark W. Dobronski, appearing *in propria persona,* and for his Complaint says:

 1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.111, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Uniform Voidable Transactions Act ("MUVTA"), M.C.L. § 566.31, *et seq.*

### Jurisdiction and Venue

 2. This Court has jurisdiction over the subject matter of this complaint and venue is proper

3

in this Court pursuant to 47 U.S.C. 227(c)(5) and M.C.L. 600.1629(1)(b)(I) as the tortious and illegal conduct and the original injury complained of herein occurred in Lima Township, Washtenaw County, Michigan.

Parties

3.  Plaintiff MARK W. DOBRONSKI is an individual, of the age of majority, a citizen of the United States of America, is a resident of Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

4.  Defendant MANASSEH JORDAN MINISTRIES, INC. ("MJM") is a religious corporation organized and existing under the laws of the State of New York, with its principal office being located at 310 Riverside Drive, New York, New York 10025.

5.  Defendant ZOE MINISTRIES INC. ("ZMI") is a religious corporation organized and existing under the laws of the State of New York, with its principal office being located at 310 Riverside Drive, New York, New York 10025.

6.  Defendant KINGDOM MINISTRIES CHURCH INC. ("Kingdom"), is a nonprofit corporation organized and existing under the laws of the State of Georgia, with its principal office being located at 194 Jonesboro Road, Jonesboro, Georgia 30236. On June 17, 2019, KINGDOM was administratively dissolved by state officials, but continues to be used as a legal fiction and the *alter ego* of co-defendant David Few, named *infra*, as an instrument of fraud.

7.  Defendant MJ MINISTRIES SPREADING THE GOSPEL, INC. ("MJMSTG"), is a nonprofit corporation organized and existing under the laws of the State of Georgia, with its principal office address being 1735 Defoor Place NW, Suite D1, Atlanta, Georgia 30333.

8.  Defendant MJ MINISTRIES LLC ("MJMLLC") is a limited liability company organized

4

and existing under the laws of the State of New York, with a principal office address of 279 West 117th Street, New York, New York 10026.

9.   Defendant SERVING HANDS COMMUNITY DEVELOPMENT CORPORATION ("SHCDC"), is a nonprofit corporation organized and existing under the laws of the State of Florida, with its principal office address being 500 Northwest 2nd Avenue, Suite 11335, Miami, Florida 33101.  Upon further information and belief, the principal office address of SHCDC is, in fact, the address of the Flagler Miami Post Office and the "suite" is, in fact, the number of a post office mail box.

10. Defendant VESSELS OF OIL MINISTRIES, INC. ("Vessels") is a nonprofit corporation organized and existing under the laws of the State of Georgia, with its principal office address being 265 Old Mill Court, Fayetteville, Georgia 30214.

11. Defendant WORSHIP CENTER OF ATLANTA INC. ("Worship") is a nonprofit corporation organized and existing under the laws of the State of Georgia, with its principal office address being 1735 Defoor Place NW, Atlanta, Georgia 30318.

12. Defendant CARLINGTON MANAGEMENT ASSOCIATES, INC. ("CMA") is a corporation organized under the laws of the State of New York which has been dissolved, but continues to be utilized as a legal fiction and the *alter ego* of Defendant Frank Peter Juliano, named *infra*, as an instrument of fraud, with an address for service of process being 279 West 117th Street, Apartment 1Q, New York, New York 10026.

13. Defendant YTEL, INC., ("Ytel") is a corporation organized and existing under the laws of the State of California, with its principal office address being 94 Icon, Foothill Ranch, California 92610.

14. Defendant RAS REALTY MANAGEMENT LLC ("RASRM") is a limited liability company organized and existing under the laws of the State of Florida, with its purported principal office address being 500 Northwest 2nd Avenue, Suite 11335, Miami, Florida 33101. The principal office address of RASRM is, in fact, the address of the Flagler Miami Post Office and the "suite" is, in fact, the number of a post office mail box.

15. Defendant SANTANDER HOLDINGS LLC ("Santander") is a limited liability company organized and existing under the laws of the State of Florida, with its purported principal office address being 500 Northwest 2nd Avenue, Suite 11335, Miami, Florida 33101. The principal office address of SANTANDER is, in fact, the address of the Flagler Miami Post Office and the "suite" is, in fact, the number of a post office mail box.

16. Defendant CARLINGTON REALTY, LLC ("CRL") is a limited liability company organized and existing under the laws of the State of Florida, with its purported principal office address being 500 Northwest 2nd Avenue, Suite 11335, Miami, Florida 33101. The principal office address of CRL is, in fact, the address of the Flagler Miami Post Office and the "suite" is, in fact, the number of a post office mail box.

17. Defendant VIRTUAL GLOBAL CONSULTANT GROUP LLC ("VGC") is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal office address being 26-40 Church Street, # 22, South Orange, New Jersey 07079, and which is authorized to transact business in the State of Michigan, with a registered office address of 16570 Baylis Street, Detroit, Michigan 48221.

18. Defendant YAKIM MANASSEH JORDAN ("Yakim") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 12220 Northwest

68th Court, Parkland, Florida 33076.

19. Defendant AARON B. JORDAN ("Aaron") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 12220 Northwest 68th Court, Parkland, Florida 33076.

20. Defendant ELIJAH BERNARD JORDAN a/k/a E. BERNARD JORDAN ("Bernard") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 1 High Meadow Road, Saddle River, New Jersey 07458.

21. Defendant DEBRA ANN JORDAN ("Debra") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 1 High Meadow Road, Saddle River, New Jersey 07458.

22. Defendant NAOMI D. COOK ("Cook"), is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 118 Ullman Avenue, Wyckoff, New Jersey 07481.

23. Defendant CHARLIE BERRIAN ("Berrian") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 160 Old Mill Court, Fayetteville, Georgia 30214.

24. Defendant FRANK PETER JULIANO ("Juliano") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 279 West 117th Street, Apartment 1Q, New York, New York 10026.

25. Defendant DAVID FEW ("Few") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 175 Tomahawk Drive, Sharpsburg, Georgia 30277.

26. Defendant ROBERT ALAN SEIBEL ("Seibel") is an individual of the age of majority,

is not an incompetent person, is not in the military service, and resides at 3019 Exeter B, Boca Raton, Florida 32434.

27. Defendant LUTHER CLYDE MCKINSTRY III ("McKinstry") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 2624 Sigsher Drive, Toledo, Ohio 43615.

28. Defendant STEVEN SLEDGE ("Sledge") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 3623 Chimney Rock Drive, Carrollton, Texas 75007.

29. Defendant JONOTHAN D. FOREMAN ("Foreman") is an individual of the age of majority, does business under the fictitious name of TECHSAVEY, is not an incompetent person, is not in the military service, and resides at 24 Mountain Avenue, West Orange, New Jersey 07052.

30. Defendant JESSE DEAN SPENCER ("Spencer") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 480 Northeast 31st Street, Unit 2202, Miami, Florida 33137.

31. Defendant NATASHA A. CHRISTIAN ("Christian") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 628 Santander Avenue, Apartment 3, Coral Gables, Florida 33534.

32. Defendant WENDY EKUA DACRUZ ("Dacruz") is an individual of the age of majority, is not an incompetent person, is not in the military service, and resides at 16570 Baylis Street, Detroit, Michigan 48221.

<u>General Allegations</u>

33. In response to widespread public outrage over telemarketers, the United States Congress acted to prevent entities, like Defendants, from invading American citizen's privacy and to prevent

8

abusive "robo-calls."

34. According to the Federal Communications Commission ("FCC") , "[u]nwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

35.  Congress explicitly found that robo-calling is an invasion of privacy: "Evidence compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator, to be a nuisance and an invasion of privacy."  Section 2 of Pub L. 102-243.

36. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained:

> "Computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459 at note 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

37. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during the calendar month of February 2020 alone there were 4.8 billion robocalls initiated across the United States -- that works out to 166.3 million robocalls each day; 6.9 million robocalls each hour; 1,900 robocalls per second, or 14.7 robocalls per person. [Source: www.robocallindex.com].

38.  Congress found that telemarketing fraud has become a problem of such magnitude that the resources of the Government alone are not sufficient to ensure adequate consumer protection

from such fraud; consumers and others are estimated to lose in excess of $40 billion a year in telemarketing fraud; and consumers are victimized by other forms of telemarketing deception and abuse.

39. In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

40. The TCPA promulgates, at 47 U.S.C. § 227(b)(1)(B), as follows:

"(b) Restrictions on use of automated telephone equipment

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B). . . ."

41. Pursuant to authority delegated to it under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

42. The TCPA regulations, at 47 C.F.R. § 64.1200(a)(3), promulgate in relevant part:

"No person or entity may:...

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i)     Is made for emergency purposes;

(ii)    Is not made for a commercial purpose;

(iii)   Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

10

    (iv)     Is made by or on behalf of a tax-exempt nonprofit
organization; or

    (v)     Delivers a "health care" message made by, or on behalf of, a
"covered entity" or its "business associate," as those terms are
defined in the HIPAA Privacy Rule, 45 CFR 160.103."

43. The TCPA regulations, at 47 C.F.R. 64.1200(b), promulgate in relevant part:

"All artificial or prerecorded voice telephone messages shall:

(1) At the beginning of the message, state clearly the identity of the
business, individual, or other entity that is responsible for initiating
the call. If a business is responsible for initiating the call, the name
under which the entity is registered to conduct business with the State
Corporation Commission (or comparable regulatory authority) must
be stated;

(2) During or after the message, state clearly the telephone number
(other than that of the autodialer or prerecorded message player that
placed the call) of such business, other entity, or individual. The
telephone number provided may not be a 900 number or any other
number for which charges exceed local or long distance transmission
charges. For telemarketing messages to residential telephone
subscribers, such telephone number must permit any individual to
make a do-not-call request during regular business hours for the
duration of the telemarketing campaign; and

(3) In every case where the artificial or prerecorded voice telephone
message includes or introduces an advertisement or constitutes
telemarketing and is delivered to a residential telephone line or any
of the lines or telephone numbers described in paragraphs (a)(1)(I)
through (iii), provide an automated, interactive voice- and/or key
press-activated opt-out mechanism for the called person to make a
do-not-call request, including brief explanatory instructions on how
to use such mechanism, within two (2) seconds of providing the
identification information required in paragraph (b)(1) of this section.
When the called person elects to opt out using such mechanism, the
mechanism, must automatically record the called person's number to
the seller's do-not-call list and immediately terminate the call. When
the artificial or prerecorded voice telephone message is left on an
answering machine or a voice mail service, such message must also
provide a toll free number that enables the called person to call back
at a later time and connect directly to the automated, interactive

11

voice- and/or key press-activated opt-out mechanism and automatically record the called person's number to the seller's do-not-call list."

44. The TCPA regulations, at 47 C.F.R. § 64.1200(d), promulgate in relevant part:

"No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list...

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made...

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted...."

45. The TCPA regulations, at 47 C.F.R. § 64.1601(e), promulgate:

"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.

(1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.

12

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information...."

46.   The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

"PRIVATE RIGHT OF ACTION.   A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C)   both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

47.   Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200©, and promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

48.   The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

"The rules set forth in paragraph (c) and (d) in this section are

13

applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

49. The FCC has held that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". <u>See</u> *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014 at para. 36 (2003).

50. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone numbers appearing of the do-not-call list, provides for a private right of action, as follows:

> "Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or
>
> (C)  both such actions.
>
> It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

51. A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii). *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (U.S.,2016).

52. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

14

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

53.   The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made...

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

54.   The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

55.   The MTCCCA, at M.C.L. § 484.125(2), promulgates in relevant part as follows:

"A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:...

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:

15

(I) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...

(9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

56.  Plaintiff's cellular telephone numbers (ending in -9211 and -9671) are listed on the National Do Not Call Registry maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least 2004 and at all times relevant hereto.

57.  By listing his cellular telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his cellular telephone numbers.

58.  Defendants are engaged in, *inter alia*, telemarketing activities utilizing automated telephone dialing systems and prerecorded voice messages to contact consumers offering to sell prophetic messages and financial miracles which they claim to have received from God.

59.  At no time relevant hereto has Plaintiff requested, consented, permitted, or authorized

telephone contact from the Defendants.

60.  At no time relevant hereto has Plaintiff provided prior express consent or prior express written consent to Defendants to initiate telemarketing calls to Plaintiff.

61.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by a common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

62.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

63.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

64.  It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

65.  Plaintiff's home, office, and wireless telephone lines have been besieged with

telemarketing calls hawking such things as alarm systems, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some of the calls received by Plaintiff are blatant scams, including, *inter alia,* calls purportedly from the Internal Revenue Service advising that arrest warrants have been issued against Plaintiff; calls advising that Plaintiff has won a "free" Caribbean resort vacation; and, calls advising that Plaintiff's credit card interest rate is being lowered to zero percent.

66.  For each and every call placed without consent by Defendant to Plaintiff's telephone number, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

67.  For each and every call placed without consent by Defendant to Plaintiff's telephone, Plaintiff suffered the injury of the occupation of Plaintiff's telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

68.  For each and every call placed without consent by Defendant to Plaintiff's telephone was an injury in the form of a nuisance and annoyance to the Plaintiff.  For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them.  Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

69.  Each and every call placed without consent by Defendant to Plaintiff's telephone resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone and his telephone services.

70.  As a result of the telephone calls described herein, Plaintiff suffered an invasion of

privacy.  Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation.

71.  The conduct of Defendants complained of herein caused injury and damage to Plaintiff, including, *inter alia,* the annoyance and interruption of Plaintiff's personal and business activities to respond to Defendants' telephone calls; the tieing up of Plaintiff's telephone lines, thereby blocking legitimate callers from being able to get through and engage in essential communications with Plaintiff; and, the waste of Plaintiff's resources to respond to Defendant's telephone calls.

72.  Fraud by wire is a felony crime under federal law.  18 U.S.C. § 1343 promulgates:

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . ."

73.  For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law.  A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

### Civil Conspiracy

74.  The Defendants have joined together and made an agreement to form a partnership or concert of action in which each member becomes the agent or partner of every other member and engage in planning or agreeing to commit some act or aiding and abetting in the furtherance of the overall scheme.

75.  The leaders of the scheme are Defendants Bernard, Debra, Yakim, Aaron, Naomi and

19

Berrian, who will be referred to herein collectively as the "Jordan Family."

76.   The scheme involves initiating illegal robocalls to millions of households across the United States, with recorded messages preaching that God has shared information with the Defendants, typically involving money coming to the consumer, and  for a "seed" (monetary donation) the Defendants will share the "prophecy" with the called party.

77.   As part of Defendants' scheme, Defendants target their robocalls to vulnerable individuals.

78.   As a furtherance of the scheme, in order to evade tax authorities, launder the proceeds, and to conceal the assets, Defendants have created a maze of corporations and limited liability companies and other entities controlled by Jordan Family members and/or Jordan Family shills, through which they funnel the millions of dollars of "donations" which Defendants collect from the called persons.

79.   The Jordan Family utilizes its shills to act as money mules to money launder the proceeds received through the maze of corporations and limited liability companies.

80.   Through the use of the complex maze of corporate entities, the Jordan Family is able to utilize their shills as straw persons behind which the Jordan Family can conceal their involvement.

81.   As part of the money laundering process, Defendants purchase lavish and expensive real estate, often for the personal use of the Defendants, then will subsequently sell the purchased real estate to another co-defendant entity for a purported loss; thus conveying the assets beyond the reach of creditors' claims and additionally evading tax authorities by faux paper losses.

82.   Defendants utilize the front of "charitable organizations" in order to receive donations without having to report same to federal or state tax authorities.

83.   Under federal law, no part of the net earnings of a charitable organization may inure to

20

the benefit of any private shareholder or individual. 26 U.S.C § 501(c)(3).

84. Despite the legal prohibition, substantial amounts of the revenues received by the purported non-profit/charity entities are utilized to pay the lavish personal expenses of the individual Defendants.

85. Defendants Bernard and Debra are the co-founders and leaders of Defendant ZMI, a "nonprofit religious" organization.

86. Defendants Bernard and Debra claim that they are prophets of God.

87. ZMI owns the web site http://www.zoeministries.com which it uses to market, advertise, and sell products and services.

88. ZMI engaged in robocalling to find donors and to generate revenue.

89. As a result of the robocalls, millions of dollars flowed into ZMI's bank account.

90. On July 16, 2010, the Federal Communications Commission ("FCC") issued an official citation to Defendants ZMI and Bernard accusing them of sending illegal robocalls to cell phones, emergency lines, health care facilities and residential lines, and threatened that if there were future violations the FCC "may impose monetary forfeitures not to exceed $16,000 for each violation or each day of a continuing violation."

91. Immediately thereafter, ZMI purportedly ceased its robocalling activities.

92. On October 8, 2010, Defendants Yakim, Aaron, and Naomi, who are three of the children of Defendants Bernard and Debra, along with Defendant Berrian, who is brother to Defendant Debra and also claims to be a "prophet" in Defendant ZMI, incorporated MJM.

93. Both MJM and ZMI use the same address of 310 Riverside Drive, New York, New York 10025.

94. MJM commenced engaging in the robocalling activities that ZMI had purportedly

21

ceased.

95. MJM owns the web site www.prophetmanasseh.com which it uses to market, advertise, and sell its products and services.

96. On September 13, 2016, the FCC issued a citation and order to Yakim and MJM regarding unauthorized prerecorded calls to wireless telephones, ordering Yakim and MJM to cease and desist, and threatened that if there were future violations the FCC may impose monetary forfeitures not to exceed $18,936 for each violation or each day of a continuing violation.

97. Numerous lawsuits have been filed against MJM, often including Yakim and sometimes other of the Defendants in this lawsuit, for violations of the TCPA.

98. As judgments began to be issued by various courts against MJM, suddenly millions of dollars of "seed faith donations" which vulnerable individuals believe that they are giving to MJM instead end up behind the scenes being diverted to the "collection plate"[1] at Kingdom.

99. The purported officers of Defendant Kingdom are Defendant Few as President, and Defendant Seibel as Chief Financial Officer.

100. The web site for Kingdom (which is now inactive) contained common information from the MJM web site, including listing the same mailing address in New York City for donations, and the same telephone number.

101. On October 16, 2017, as lawsuits are being filed tying Kingdom into the illegal robocalls, up pops Defendant MJMSTG as a newly-formed nonprofit corporation in Georgia.

102. Suddenly, the millions of dollars of "donations" being made by consumers to MJM, which were being diverted into Kingdom's bank account, now are being diverted into MJMSTG's

---

[1] The "collection plate" usually being Internet-accessed online credit card merchant accounts.

22

bank account.

103.  The purported officers of MJMSTG are Defendant McKinstry as Chief Executive Officer, Defendant Sledge as Secretary, and Defendant Aaron as Chief Financial Officer.

104.  The website for Defendant MJM (www.prophetmanasseh.com) also has common pages with Defendant MJMSTG; the "donations" page links to a page on MJMSTG's web site (www.mjspreadthegospel.com/donations#content).

105.  Defendant MJMLLC is utilized by the Defendants as an instrument to conceal monies actually received by Defendant MJM as part of the scheme.

106.  The purported manager of MJMLLC is Defendant Juliano.

107.  Defendant SHCDC is utilized by the Defendants as an instrument to conceal real estate assets acquired with the monies received as part of the overall scheme.

108.  The purported officers of SHCDC are Defendant Aaron as president, Defendant Juliano as secretary and director, Defendant McKinstry as director, Defendant Foreman as vice president and director, Defendant Spencer as vice president, and Defendant Christian as director.

109.  Defendant CMA is utilized by the Defendants as an instrument to conceal monies actually received by the other defendant entities from creditors.

110.  The purported president of CMA is Defendant Juliano.

111.  Defendant RASM is utilized by the Defendants as an instrument to conceal real estate assets acquired with the monies received as part of the overall scheme.

112.  The prefix initials "RAS" in RASRM are a veiled reference to Defendant Seibel.

113.  The managers of RASRM are Defendant Juliano, Defendant Few, and Defendant Seibel.

114.  Defendant Santander is utilized by the Defendants as an instrument to conceal real

estate assets acquired with the monies received as part of the overall scheme.

115. The managers of Santander are Defendant Aaron as president, Defendant Juliano, and Defendant Spencer.

116. Defendant CRL is utilized by the Defendants as an instrument to conceal real estate assets acquired with the monies received as part of the overall scheme.

117. The managers of CRL are Defendant Aaron as president, Defendant Juliano, and Defendant Spencer.

118. Defendant Vessels is utilized by the Defendants as an instrument to conceal monies received as part of the overall scheme.

119. The president of Vessels is Defendant Berrian.

120. Defendant Worship is utilized as part of the overall scheme as a pass through in which to conceal revenues actually received from the other co-defendant entities.

121. The officers of Worship are Defendant McKinstry as chief executive officer, and Defendant Sledge as vice president.

122. Defendant Virtual is utilized as part of the overall scheme to, *inter alia*, develop the telemarketing leads utilized in the robocalling operations and to develop the Internet web sites utilized by the defendant entities.

123. The managers of Virtual are Defendant Naomi and Defendant Dacruz.

124. Defendant Aaron, a Jordan Family member, oversees many of the entity defendants. Defendant Aaron is a director and officer of Defendant MJM, chief financial officer of Defendant MJMSTG, president of Defendant SHCDC, president of Defendant Santander, and president of Defendant CRL.

125. Defendant Naomi, a Jordan Family member, is a director and officer of Defendant

24

MJM, a manager of Defendant ZMI, and a manager of Defendant Virtual.

126.  Defendant Berrian, a Jordan Family member, is a director and officer of Defendant MJM, a manager of Defendant ZMI, and president of Defendant Vessels.

127.  Defendant Juliano is a front man and shill for the Jordan Family, including being a manager of ZMI, chief operating officer of MJM, manager of MJMLLC, president of CMA, manager of RAS, manager of SANTANDER, officer and director of SHCDC, and manager of CRL.

128.  Defendant Few is a shill for the Jordan Family, is or was a manager at ZMI, is or was a manager at MJM, was the Chairman and Chief Executive Officer of now-defunct Kingdom, and is a manager of RASRM.

129.  Defendant Seibel is a shill for the Jordan Family, has acted as an attorney for both MJM and ZMI and the Jordan Family members individually, was vice chairman and secretary/treasurer of now-defunct Kingdom, and is a manager of RASRM.

130.  Defendant McKinstry is a shill for the Jordan Family, is the chief executive officer of MJMSTG, chief executive officer of Worship, and a manager of RASRM.

131.  Defendant Sledge is a shill for the Jordan Family, is the secretary of MJMSTG, and is vice president of Worship.

132.  Defendant Foreman is a shill for the Jordan Family; in addition to being vice president of SHCDC, Foreman provides technical assistance to the overall scheme through his business operated under the tradename Techsavey.

133.  Defendant Spencer is a shill for the Jordan Family, is a vice president of SHCDC, a manager of RASRM, a manager of Santander, and a manager of CRL.

134.  Defendant Spencer aids, abets, and facilitates the scheme by virtue of his being a licensed real estate salesperson in the State of Florida.

135.   Additionally, Spencer aids, abets, and facilitates the scheme by being the designated registered agent on many of the shill corporation and limited liability entities formed in Florida by the Jordan Family and their shills.

136.   Defendant Ytel provides the automated telephone dialing system (robocalling) platform utilized by the Defendants to initiate the prerecorded voice message calls.

137.   Defendant Ytel knowingly and overtly participates in the scheme by facilitating the illegal "spoofing" of telephone numbers and blocking of Caller ID of the outbound "robocalls" and initiating the calls on behalf of the Defendants to consumers, *en masse*.

138.   Defendant Ytel, despite being fully aware of the FCC citations issued against Defendants ZMI, MJM and Yakim, and the numerous lawsuits having been filed against various of the Defendants, all stemming from TCPA violations, nonetheless continues to aid, abet and facilitate the Defendants by providing them with Ytel's "robocalling" platform and engineering the Caller ID spoofing and blocking functionality.

139.   Numerous lawsuits have been filed against Juliano stemming from his active involvement in orchestrating and directing illegal robocalls on behalf of several of the defendants in this lawsuit.

140.   Plaintiff holds a judgment against Defendants MJM, Yakim, and Juliano in an amount in excess of $309,189.80 stemming from TCPA violations relative to other robocalls which occurred during the period January 18, 2019 through March 15, 2019, inclusive.[2]

141.   Plaintiff has been thwarted in his attempts at collecting on the judgment he holds

---

[2] *Mark W. Dobronski v. Manasseh Jordan Ministries, Inc., Yakim Manasseh Jordan, and Frank Peter Juliano*, Default Judgment, Washtenaw County Circuit Court Case No. 19-301-CZ (May 13, 2019).

against Defendants MJM, Yakim, and Juliano, as the judgment debtors have deliberately and fraudulently transferred and concealed their assets.

142. The fact that Defendants MJM, Defendant Yakim, and Defendant Juliano have not paid the judgment entered against them is presumptive evidence that the named defendants are insolvent. *See* M.C.L. § 566.32(2).

143. One example of an insider real estate transaction took place on June 15, 2016, when Defendant Kingdom purchased a residential mansion located at 12220 Northwest 68th Court, Parkland, Broward County, Florida, for the price of $2.65 Million.

144. Shortly thereafter, as TCPA lawsuits begin being filed against Defendant Kingdom, suddenly Defendant RASRM is formed, and a mere two months after its formation, on May 15, 2017, RASRM purchases the residential mansion located at 12220 Northwest 68th Court, Parkland, Florida, for the price of $1.387 Million – purportedly at a 48 percent loss in value over the course of a mere eleven months. The transfer of the mansion from Kingdom to RASRM effectively placed that substantial real asset out of the reach of judgment creditors of Kingdom.

145. The fraudulent nature of the real estate transactions involving the Parkland, Florida residential mansion is further evidenced by the fact that, although the residential mansion has gone through a conveyance between two entities under control of the Jordan Family or Jordan Family shills, Defendant Yakim continues to maintain dominion and control of, and resides at, the residential mansion.

<u>The Robocalls</u>

146. Attached hereto, at EXHIBIT A, is a summary listing showing the date, time, and caller identification number displayed for 60 telephone calls initiated by Defendants to Plaintiff's cellular telephone with number ending in 9211.

27

147. Attached hereto, at EXHIBIT B, is a summary listing showing the date, time, and caller identification number displayed for 21 telephone calls initiated by Defendants to Plaintiff's cellular telephone with number ending in 9671.

148. Plaintiff was not always able to log each and every call received, thus there were many more calls than the 81 logged calls received from Defendants during the period March 18, 2019 to the date of the filing of this lawsuit.

149. Defendants are better informed as to the total number of calls initiated by them to Plaintiff's cellular telephone numbers, and Plaintiff reserves the right to amend the complaint to increase his claims upon the discovery of additional telephone calls so initiated by the Defendants.

150. In order to identify the person or persons responsible for initiating the subject telephone calls, Plaintiff had to endure listening to a long-winded recorded message and then would be connected to a "blessed operator"[3] to give a donation.

151. On several occasions, Plaintiff would speak to the "blessed operator" and request that his telephone number be placed on Defendants' internal "do not call" list, only to be promptly hung up on, yet the telephone calls still continued to be received by Plaintiff.

## COUNT I
### VIOLATION OF THE TCPA - ROBOCALL

152. Plaintiff incorporates the allegations of paragraphs 1 through 151, *supra.*

153. Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants initiated a telephone call to Plaintiff's cellular telephone lines using an automatic

---

[3]    The term "blessed operator" was utilized in each of the prerecorded messages received. The recorded voice would pronounce "blessed" as if it contained two distinct syllables: *i.e.*, bless-ed.

telephone dialing system and/or artificial prerecorded voice without the prior express consent of the called party and without there being an emergency purpose.

154.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT II
### VIOLATION OF THE TCPA - FAILURE TO IDENTIFY BUSINESS

155.   Plaintiff incorporates the allegations of paragraphs 1 through 154, *supra.*

156.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(1), as Defendants failed to, at the beginning of the artificial or prerecorded voice message, state clearly the identify of the business or other entity that is responsible for initiating the call.

157.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT III
### VIOLATION OF THE TCPA - FAILURE TO PROVIDE TELEPHONE NUMBER

158.   Plaintiff incorporates the allegations of paragraphs 1 through 157, *supra.*

159.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(2), as Defendants failed to, during of after the artificial or prerecorded message, state clearly the telephone number of such business or other entity.

160.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
### VIOLATION OF THE TCPA - NO OPT-OUT

161.   Plaintiff incorporates the allegations of paragraphs 1 through 160, *supra.*

162.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1200(b)(3), as Defendants failed to provide an

automated, interactive voice- and/or key press-activated opt-out mechanism for the called party to make a do-not-call request.

163.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT V
### VIOLATION OF THE TCPA - SPOOFED CALLER ID

164.   Plaintiff incorporates the allegations of paragraphs 1 through 163, *supra*.

165.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e), as the caller identification number provided was "spoofed" (i.e., false) by the Defendant or Defendant's agent.

166.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT VI
### VIOLATION OF THE TCPA - DO NOT CALL

167.   Plaintiff incorporates the allegations of paragraphs 1 through 166, *supra*.

168.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's agent initiated a telephone call to a telephone number registered on the national do-not-call registry.

169.   The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT VII
### VIOLATION OF THE MHSSA

170.   Plaintiff incorporates the allegations of paragraphs 1 through 169, *supra*.

171.   Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on

the federal do-not-call list; M.C.L. 445.111b(1), as Defendants did not at the beginning of the telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request; and, M.C.L. 445.111b(3), Defendants interfered with the caller identification function on the telephone so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

**COUNT VIII**
**VIOLATION OF THE MTCCCA**

172. Plaintiff incorporates the allegations of paragraphs 1 through 171, *supra.*

173. Each of the 81 telephone calls alleged in paragraphs 146 and 147, *supra*, were in violation of the MTCCCA, specifically M.C.L. § 484.125(2)(b), as Defendants delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

**COUNT IX**
**VIOLATION OF THE MUVTA**

174. Plaintiff incorporates the allegations of paragraphs 1 through 173, *supra.*

175. Any and all fraudulent transfers engaged in by the Defendants are in violation of the MUVTA, and as such, Plaintiff is entitled to relief as provided at M.C.L. § 566.37.

**PRAYER FOR RELIEF**

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A.     1. As to Count I:  Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

2.  As to Count II:  Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

3.  As to Count III:  Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

4.  As to Count IV:  Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

5.  As to Count V:  Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

6.  As to Count VI:   Damages in the amount of $500.00 for each of the 81 TCPA violations alleged, for damages of $40,500.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $121,500.00.

7.  As to Count VII: Damages in the amount of $250.00 for each of the 81 MHSSA violations alleged, for total damages of $20,250.00.

8.  As to Count VIII: Damages in the amount of $1,000.00 for each of the 81 MTCCCA violations alleged, for total damages of $81,000.00.

9.  As to Count IX: Avoidance of the transfer or obligation to the extent necessary to satisfy Plaintiff's claim; an attachment or other provisional remedy against the asset transferred; and an injunction against further disposition by the Defendants.

The cumulative total amount of damages claimed in this action is $830,250.00, and in the event of

32

default judgment is the sum certain that will be sought.

B. Such other and further damages for any additional telephone calls which may be uncovered during the course of discovery.

C. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: September 22, 2020

Mark W. Dobronski

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

33

## VERIFICATION

State of Michigan      )
                       ) *s.s.;*
County of Wayne        )


     MARK W. DOBRONSKI, being first duly sworn, says:

     1.  I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

     2.  I have read the Complaint in the foregoing matter, and I know the contents thereof.  The matters stated in the Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

     3.  If sworn as a witness, I can testify competently to the facts as set forth in the  Complaint.

     Further, affiant sayeth naught.


                               Mark W. Dobronski


Subscribed and sworn to before me
this  **22nd**   day of September, 2020.


Sandra J. Clarke
Notary Public
State of Michigan, Lenawee County
Acting in Wayne County
My Commission Expires November 23, 2023


34

**EXHIBIT  A**

<u>**Telephone Calls to Plaintiff's Cellular Telephone Ending in -9211:**</u>

| DATE | TIME | CALLER ID |
|------|------|-----------|
| 3/18/2019 | 2:42 PM | 602-638-0956 |
| 3/19/2019 | 12:45 PM | 602-867-3863 |
| 3/20/2019 | 12:01 AM | 928-275-6887 |
| 3/21/2019 | 6:22 PM | 661-578-3543 |
| 3/21/2019 | 1:47 PM | 602-286-3085 |
| 3/22/2019 | 2:36 PM | 937-603-1589 |
| 3/22/2019 | 12:22 PM | 850-263-5020 |
| 3/23/2019 | 1:27 PM | 928-275-6887 |
| 3/25/2019 | 1:54 PM | 602-600-6343 |
| 3/26/2019 | 9:09 PM | 602-598-4889 |
| 3/26/2019 | 11:20 AM | 602-896-9211 |
| 3/27/2019 | 4:28 PM | 602-485-4371 |
| 3/30/2019 | 3:49 PM | 520-201-6686 |
| 3/30/2019 | 6:36 PM | 602-956-2996 |
| 3/30/2019 | 3:49 PM | 520-201-6686 |
| 4/2/2019 | 6:47 PM | 480-524-0626 |
| 4/2/2019 | 11:36 PM | 480-666-1128 |
| 4/3/2019 | 3:57 PM | 602-690-2774 |
| 4/6/2019 | 5:41 PM | 480-666-1128 |
| 4/7/2019 | 9:33 PM | 480-666-1128 |
| 4/8/2019 | 1:58 PM | 480-524-0626 |
| 4/12/2019 | 7:01 PM | 480-666-1128 |
| 4/15/2019 | 4:13 PM | 877-773-3545 |
| 4/16/2019 | 1:36 PM | 480-524-0626 |
| 4/17/2019 | 4:50 PM | 602-690-9494 |
| 4/20/2019 | 1:11 PM | 928-275-6887 |
| 4/23/2019 | 3:29 PM | 201-462-1316 |
| 4/24/2019 | 9:44 PM | 520-201-6686 |
| 4/26/2019 | 8:43 PM | 928-275-6887 |
| 4/28/2019 | 10:43 PM | 928-216-4392 |
| 4/30/2019 | 8:22 PM | 520-201-6495 |
| 5/3/2019 | 5:24 PM | 610-761-9836 |
| 5/4/2019 | 7:13 PM | 520-201-6686 |
| 5/5/2019 | 10:51 PM | 520-201-6495 |
| 5/6/2019 | 5:02 PM | 213-861-8018 |
| 5/6/2019 | 4:47 PM | 928-316-8712 |
| 5/6/2019 | 8:01 AM | 520-201-6495 |
| 5/7/2019 | 7:31 PM | 602-598-4889 |

| DATE | TIME | CALLER ID |
|------|------|-----------|
| 5/9/2019 | 8:00 PM | 928-316-3712 |
| 5/9/2019 | 7:59 PM | 928-316-8715 |
| 5/9/2019 | 7:28 PM | 928-316-8716 |
| 5/9/2019 | 6:59 PM | 480-651-8580 |
| 5/9/2019 | 12:24 PM | 480-651-8580 |
| 5/11/2019 | 1:22 PM | 480-666-1128 |
| 5/17/2019 | 4:56 PM | 602-581-8121 |
| 5/17/2019 | 3:44 PM | 602-690-3572 |
| 5/17/2019 | 2:16 PM | 928-316-8712 |
| 5/17/2019 | 1:14 PM | 205-850-1558 |
| 5/18/2019 | 1:36 PM | 602-598-4889 |
| 5/19/2019 | 10:48 PM | 480-485-3537 |
| 5/20/2019 | 6:40 PM | 949-229-4652 |
| 5/21/2019 | 8:55 PM | 928-220-9326 |
| 5/25/2019 | 5:06 PM | 480-666-1128 |
| 5/26/2019 | 11:13 PM | 602-598-4887 |
| 5/29/2019 | 5:07 PM | 602-638-0626 |
| 5/30/2019 | 1:19 PM | 701-555-0114 |
| 5/31/2019 | 10:31 PM | 928-275-6887 |
| 6/2/2019 | 10:54 PM | 480-485-3537 |
| 6/28/2019 | 9:12 PM | 928-220-9326 |
| 7/15/2019 | 11:11 PM | 602-357-2161 |

**EXHIBIT  B**

**Telephone Calls to Plaintiff's Cellular Telephone Ending in -9671:**

| DATE | TIME | CALLER ID |
|------|------|-----------|
| 3/26/2019 | 2:55 PM | 989-214-3900 |
| 3/26/2019 | 2:54 PM | 989-214-3900 |
| 4/5/2019 | 5:15 PM | 248-617-1953 |
| 4/19/2019 | 4:11 PM | 248-617-1963 |
| 4/19/2019 | 5:04 PM | 734-506-0020 |
| 4/19/2019 | 2:12 PM | 734-330-7399 |
| 4/23/2019 | 1:21 PM | 248-617-1963 |
| 4/26/2019 | 12:59 PM | 989-214-3900 |
| 4/30/2019 | 4:43 PM | 989-214-3900 |
| 4/30/2019 | 2:30 PM | 734-244-0938 |
| 4/30/2019 | 4:43 PM | 989-214-3900 |
| 5/5/2019 | 5:00 PM | 248-617-1953 |
| 5/7/2019 | 5:36 PM | 734-330-8080 |
| 5/7/2019 | 5:06 PM | 734-330-9676 |
| 5/7/2019 | 7:58 PM | 888-483-5083 |
| 5/28/2019 | 8:13 PM | 734-340-2015 |
| 5/29/2019 | 7:00 PM | 734-253-6657 |
| 5/31/2019 | 5:33 PM | 989-214-3900 |
| 6/1/2019 | 2:21 PM | 248-467-4173 |
| 6/1/2019 | 1:56 PM | 248-467-4173 |
| 6/2/2019 | 3:15 PM | 248-617-1953 |