

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**MARK W. DOBRONSKI**,

          Plaintiff,

v.

**MANASSEH JORDAN MINISTRIES, INC.**, *et al.*,

          Defendants.

Case No. **20-cv-12862**

Honorable Robert H. Cleland,
United States District Judge

Honorable David R. Grand,
United States Magistrate Judge

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
734-641-2300
markdobronski@yahoo.com
Plaintiff *Pro Se*

John A. Hubbard (P39624)
Hubbard Snitchler & Parzionaello PLC
801 West Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170-1694
313-672-7300
jhubbard@hspplc.com
Attorney for Defendant Ytel, Inc.

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT YTEL, INC.'S AMENDED MOTION TO DISMISS YTEL, INC. DUE TO <u>LACK OF PERSONAL JURISDICTION</u>

Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, pursuant to E.D. Mich. LR 7.1(c), hereby responds to Defendant Ytel, Inc.'s Amended Motion to Dismiss Ytel, Inc. Due to Lack of Personal Jurisdiction [ECF No. 6].

As an initial matter, at no time did counsel for Defendant Ytel, Inc. ("Ytel") conduct a conference with Plaintiff wherein counsel for movant requested

concurrence in any motion, as is required by E.D. Mich. LR 7.1(a).  For this reason alone, this Court should deny Defendant Ytel's motion.

Defendant Ytel seeks to dismiss the Complaint against Ytel pursuant to Fed. R. Civ. P. 12(b)(2) on the basis that this Court lacks personal jurisdiction over Defendant Ytel.

As will be demonstrated in Plaintiff's accompanying Brief in Opposition attached hereto, this Court has personal jurisdiction over Defendant Ytel and the claims as set forth against Ytel in Plaintiff's Complaint.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant Ytel's Motion to Dismiss.

Respectfully submitted,

Dated: November 23, 2020

Mark W. Dobronski
Plaintiff *Pro Se*

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *Pro Se*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MARK W. DOBRONSKI**,

                Plaintiff,

v.

**MANASSEH JORDAN MINISTRIES, INC.**, *et al.*,

                Defendants.

Case No. **20-cv-12862**

Honorable Robert H. Cleland,
United States District Judge

Honorable David R. Grand,
United States Magistrate Judge

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
734-641-2300
markdobronski@yahoo.com
Plaintiff *Pro Se*

John A. Hubbard (P39624)
Hubbard Snitchler & Parzionaello PLC
801 West Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170-1694
313-672-7300
jhubbard@hspplc.com
Attorney for Defendant Ytel, Inc.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT YTEL, INC.'S AMENDED MOTION TO DISMISS YTEL, INC. DUE TO LACK OF PERSONAL JURISDICTION

NOW COMES Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, and for his Brief in Opposition to Defendant Ytel, Inc.'s ("Ytel") Motion to Dismiss Complaint against Defendant Ytel, Inc. Pursuant to Fed. R. Civ. O. 12(b0(2) on the basis that this Court lacks jurisdiction over the Defendant, states as follows:

## <u>STATEMENT OF ISSUES PRESENTED</u>

Under Michigan's long-arm statute, does this Court have limited personal jurisdiction over Defendant Ytel, Inc.?

      Defendant says:    No.

      Plaintiff says:    Yes.

# MOST CONTROLLING AUTHORITY

## Cases

*Air Prod. & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 (1985).

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7980-81, 2015 WL 4387780, at *11, ¶ 25.

*Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

*SFS Check, LLC v. First Bank of Delaware*, 990 F.Supp.2d 762, 771 (E.D. Mich. 2013).

*Sifers v. Horen*, 188 N.W.2d 623, 627, 385 Mich. 195, 205 (Mich. 1971).

*Yoost v. Caspari*, 295 Mich. App. 209, 224-5, 813 N.W.2d 783, 792 (Mich.App 2012).

## Federal Rules

Fed. R. Civ. P. 12(b)(2)

## Statutes

M.C.L. 600.715

## **INTRODUCTION**

### **Procedural Background**

On September 23, 2020, Plaintiff initiated this case in the State of Michigan,

22nd Judicial Circuit Court, alleging violations of the Telephone Consumer Protection

Act, 47 U.S.C. § 227, *et seq.*, the Michigan Home Solicitation Sales Act, M.C.L. §

445.111, *et seq.*, the Michigan Telephone Companies as Common Carriers Act,

M.C.L. § 484.101, *et seq.*, the Michigan Uniform Voidable Transactions Act, M.C.L.

§ 566.31, *et seq.*, and civil conspiracy, by and amongst the 29 named defendants.

[ECF No. 1-2].

On October 26, 2020, this matter was removed from the State of Michigan, 22nd

Judicial Circuit Court, to this Court. [ECF No. 1].

Subsequent to the removal, to date, six (6) defendants have been defaulted for

failure to answer or respond to the complaint,[1] sixteen (16) defendants have filed 4

motions to dismiss;[2] and 5 more defendants have between now and November 25,

---

[1] Defaulted defendants include: Manasseh Jordan Ministries, Inc. [ECF No. 31]; Zoe Ministries, Inc. [ECF No. 15]; Kingdom Ministries Church, Inc. [ECF No. 16]; MJ Ministries LLC [ECF No. 30]; Elijah Bernard Jordan a/k/a E. Bernard Jordan [ECF No. 13]; and, Debra Ann Jordan [ECF No. 14].

[2] Defendants having filed motions to dismiss include: YTEL, Inc. [ECF Nos. 4 and 6]; Robert Alan Seibel [ECF No. 5]; David Few and RAS Realty Management LLC [ECF No. 33]; Charlie Berrian and Vessels of Oil Ministries, Inc. [ECF No. 34]; Carlington Management Associates, Inc., Natasha A. Christian, Jonothan D. Foreman, Aaron B. Jordan, Frank Peter Juliano, Luther Clyde McKinstry III, Santander Holdings LLC, Serving Hands Community Development Corporation, Jesse Dean Spencer, and Worship Center of Atlanta, Inc. [ECF Nos. 37 and 44].

2020 to file answers or responsive pleadings.[3]

On November 2, 2020, Defendant Ytel, Inc. ("Ytel") filed Defendant Ytel, Inc.'s Motion to Dismiss Ytel, Inc. Due to Lack of Personal Jurisdiction [ECF No. 4].

On November 3, 2020, Defendant Ytel filed Defendant Ytel, Inc.'s Amended Motion to Dismiss Due to Lack of Personal Jurisdiction [ ECF No. 6].

## Discussion

**A.   Legal Standard - Lack of Personal Jurisdiction - Rule 12(b)(2).**

Defendant Ytel's motion is brought pursuant to Fed. R. Civ. P. 12(b)(2).  The case law establishes a settled procedural scheme to guide trial courts in the exercise of its discretion when considering a Rule 12(b)(2) motion.  The 6th Circuit, in *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) opined:

> "In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989).   Where... the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988), and "the plaintiff must make only a prima facie showing that

---

[3]  The 5 served defendants not-yet-in-default that have not filed answers or responsive pleadings to date are: Steven Sledge, MJ Ministries Spreading the Gospel, Inc., Virtual Global Consultancy Group LLC, Naomi D. Cook, and Wendy Ekua Dacruz.

personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.* at 1459."

*Air Prod. & Controls, Inc.,* 503 F.3d at 549.

The 6th Circuit, in *Theunissen* went further to state:

"The court's treatment of a motion under Rule 12(b)(2) mirrors in some respects the procedural treatment given to a motion for summary judgment under Rule 56. For example, the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff. *Serras,* 875 F.2d at 1214; *Welsh,* 631 F.2d at 439. In sharp contrast to summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal. *Serras,* 875 F.2d at 1214; accord *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981). We adopted this rule in *Serras* in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts, as the Appellee has done in the case before us. *Id.*; accord *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). In *Serras,* we stated that the defendant who alleges facts to defeat jurisdiction has recourse to the court's discretionary authority to hold an evidentiary hearing if he disputes the plaintiff's factual assertions. *Serras,* 875 F.2d at 1214." (Emphasis as in original.)

*Theunissen,* 875 F.2d at 1459.

"[A] court may take judicial notice of its own records in other cases, as well as

the records of an inferior court in other cases," *United States v. Wilson*, 631 F.2d

118, 119 (9th Cir. 1980) (citing 9 Wright and Miller, Federal Practice and Procedure

s 2410, at 359–61 (1971); Kasey v. Molybdenum Corp. of America, 336 F.2d 560

(9th Cir. 1964).

Significantly, Ytel has been previously haled into court for the identical

misconduct alleged in the instant case, and coincidentally, also involving the same

principal as in the instant case, to wit: Manasseh Jordan Ministries, Inc. ("MJM").

Defendant Ytel in the course of the other case made a similar Rule 12(b)(2) motion

to dismiss alleging lack of personal jurisdiction. See *De la Cabada v. Ytel, Inc.*, 2020

WL 1156909 (N.D.Cal., 2020). A copy of the *De la Cabada* order is attached hereto

at Exhibit A. In that case, Magistrate Judge Corley found that the Court had personal

jurisdiction over Defendant Ytel. And, so too, should this Court in this case.

## B.    Unfounded Personal Attack.

Defendant Ytel begins its motion brief with a lack of civility by making a

gratuitous personal attack upon Plaintiff. Plaintiff has not stooped to Ytel's level and

accused anyone of engaging of barratry or champerty. It is a fact that Plaintiff has

filed a number of lawsuits arising under the Telephone Consumer Protection Act, 47

U.S.C. § 227, *et seq.* -- this being one -- but, each and every lawsuit has one common

denominator: the defendants telephoned Plaintiff in *violation of the law*; Plaintiff did

not telephone them.

Plaintiff's telephones – like most consumers in America – have been besieged with intrusive calls from telemarketers. [ECF No. 1, Complaint, ¶ 65]. The United States Congress explicitly found that robo-calling in an invasion of privacy. Section 2 of Pub. L. 102-24. In response, the Congress enacted the TCPA, intentionally creating a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as 'private attorneys general' in enforcing federal law. *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 778 (C.A.11,2011); *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489 (7ᵗʰ Cir.2014). The TCPA is a "bounty" statute. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 771 F.3d 1274, 1283 (C.A.11,2014). There is no common law principle that someone who discovers a violation of law that caused him no harm can nevertheless sue the violator for the latter's profit from the violation; there are plenty of bounty-hunter statutes. *Schlueter v. Latek*, 683 F.3d 350, 356 (C.A.7,2012). While [defendant] is understandably frustrated by [plaintiff's] efficacy, [plaintiff] is doing exactly what Congress intended – enforcing the law. *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D. W. Va. 2017).

**C.    Defendant Ytel's Misconduct**

Plaintiff has alleged in his Complaint that:

> "The Defendants have joined together and made an agreement to form a partnership or concert of action in which each member becomes the agent or partner of every other member and engage in planning or agreeing to commit some act or aiding and abetting in the futherance of the overall scheme." [ECF No. 1-2, Complaint, ¶ 74].

> "The scheme involves initiating illegal robocalls to millions of households across the United States, with recorded messages preaching that God has shared information with the Defendants, typically involving money coming to the consumer, and for a "seed" (monetary donation) the Defendants will share the "prophecy" with the called party." [ECF No. 1-2, Complaint, ¶ 76].

As to Defendant Ytel, specifically, Plaintiff has alleged:

> "Defendant Ytel provides the automated telephone dialing system (robocalling) platform utilized by the Defendants to initiate the prerecorded voice message calls." [ECF No. 1-2, Complaint, ¶ 136].

> "Defendant Ytel knowingly and overtly participates in the scheme by facilitating the illegal "spoofing" of telephone numbers and blocking of Caller ID of the outbound "robocalls" and initiating the calls on behalf of the Defendants to consumers, *en masse.*" [ECF No. 1-2, Complaint, ¶ 137].

> "Defendant Ytel, despite being fully aware of the FCC citations issued against Defendants ZMI, MJM, and Yakim, and the numerous lawsuits having been filed against various of the Defendants, all stemming from TCPA violations, nonetheless continues to aid, abet and

6

facilitate the Defendants by providing them with Ytel's "robocalling" platform and engineering the Caller ID spoofing and blocking functionality." [ECF No. 138, Complaint, ¶ 138].

Between March 18, 2019 and July 15, 2019, Defendant received no less than 81 *illegal* recorded message robocalls to his cellular telephones in which the voice of Defendant Yakim Manasseh Jordan is heard seeking " seed" in order to receive his prophetic message. [ECF No. 1-2, Complaint, ¶¶ 146-148].

Significantly, nowhere in its motion does Ytel deny that it is involved in the robocalling alleged in the Complaint. Instead, Ytel demurs that "Ytel's platform cannot 'spoof' calls"; "telephone calls are *initiated* by Ytel's customers, not by Ytel", and "Ytel has no involvement in the selection of telephone numbers called by its customers." [Motion, p. 1]. Ytel's defense is akin to an individual who provides a handgun to a second individual who has indicated his intent to commit murder and that second individual commits the murder; and then the first person then claims that they cannot be held liable because it was the second individual that pulled the trigger on the handgun.

In fact, and contrary to Ytel's averments, Ytel actively promotes that one of of the features of Ytel's platform is the ability to "spoof" calls. The Federal Communications Commission defines "spoofing" as follows:

"Spoofing occurs when a caller maliciously transmits false

7

caller ID information to increase the likelihood that you'll answer. Scammers often spoof local numbers, private companies, government agencies and other institutions."

[Source:  https://www.fcc.gov/scam-glossary].  On Ytel's own website, Ytel boldly advertises:



[Source:  https://www.ytel.com/products].

The FCC has made clear the requirements regarding transmitting of caller identification information at 47 C.F.R. 64.1601(e)(1), which promulgates:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.

(1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**" [Emphasis added.]

In this instant matter, the caller identification information provided did not include

8

the telemarketer's name and the telephone numbers displayed were outbound only and would not allow a call back, let alone to permit a do-not-call request. [ECF No. 1-2, Complaint, ¶ 265].

In another TCPA case involving co-defendant MJM -- *Craig Cunningham v. Manasseh Jordan Ministries, Inc., et al.*, Case No. 4:19-cv-00494 (U.S.D.C. E.D. Texas) -- in response to a subpoena, Ytel provided a listing of the caller identification numbers supplied by Ytel to enable MJM's "local number" robocalling. See Exhibit B, attached hereto. A review of the produced data shows that Ytel supplied over 285 spoofed Michigan telephone numbers to MJM, broken down by North American Numbering Plan area code, as follows:

| Area Code | Numbers | Area Code | Numbers |
|-----------|---------|-----------|---------|
| 231 | 36 | 616 | 20 |
| 248 | 27 | 734 | 23 |
| 269 | 25 | 810 | 19 |
| 313 | 26 | 906 | 18 |
| 517 | 31 | 947 | 17 |
| 586 | 9 | 989 | 34 |

The FCC has clarified who "makes a call" under the TCPA and is thus liable for any TCPA violations, as follows:

> "Specifically, a "direct connection between a person or entity and the making of a call" can include "tak[ing] the steps necessary to physically place a telephone call." It also can include being "so involved in the placing of a specific telephone call" as to be deemed to have initiated it. Thus, we look to the totality of the facts and circumstances

9

surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA... Depending upon the facts of each situation, these and other factors, such as the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients, can be relevant in determining liability for TCPA violations. Similarly, whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7980–81, 2015 WL 4387780, at *11, ¶ 25.

In the instant case, Ytel's defense is that "Ytel has no contacts with the State of Michigan." Ytel's assertion is disingenuous. In fact, Ytel willfully and knowingly facilitated MJM's illegal robocalling activities by procuring and supplying MJM with spoofed Michigan telephone numbers in order to create a faux "local presence" so that the robocalls would evade call blocking systems and algorithms. And, it is significant that despite Ytel being well aware of the fact that co-defendant MJM was engaged in illegal robocalling activities, Defendant Ytel continued to supply the platform and the spoofing capabilities to co-defendant MJM so that the overall

10

scheme may continue. At any time, Ytel had the ability to "pull the plug" on MJM's illegal robocalling, but it did not do so. In fact, Defendant Ytel did nothing to stop those illegal activities and continued to reap the profits from same. Ytel is so intimately involved in the illegal robocalling activities alleged, that Ytel is deemed to have made the calls and is thus liable under the TCPA.

**D.     The Court may properly exercise personal jurisdiction over Defendant Ytel for violations of the TCPA**

The Court may exercise limited personal jurisdiction over an individual if that person transacts any business within the state, does or causes an act to be done, or consequences to occur here. *SFS Check, LLC v. First Bank of Delaware*, 990 F.Supp.2d 762, 771 (E.D. Mich. 2013). Where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the Court may exercise personal jurisdiction when traditional notions of fair play and substantial justice so dictate. *Flagstar Bank, FSB v. Centerpointe Financial, Inc.*, No. 2-10-CV-14234, 2011 WL 2111984, *3 (E.D. Mich.2011). For the reasons that follow, the Court should find the pleadings in the Complaint satisfy this standard.

Under Rule 12(b)(2), the plaintiff's burden is merely that of making a prima facie showing that personal jurisdiction exists; if plaintiff meets that burden the motion to dismiss should be denied, "notwithstanding any controverting presentation by the moving party." Any other rule would empower a defendant to defeat personal

jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff. *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Michigan's long-arm statute provides for jurisdiction over a corporation which transacts *any* business within the state. M.C.L. § 600.715(1). This Court has given plain meaning to this provision, noting "the Michigan Supreme Court has held that the word 'any' in M.C.L. § 600.715(1) 'means just want is says'; it includes each and every act in this state, and is satisfied by even 'the slightest act of business in Michigan'" *Alisoglu v. Central States Thermal King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, *4 (E.D. Mich. 2012). See also, *Lanier v. American Board of Endodontics*, 843 F.2d 901, 909-09 (6th Cir. 1988).

Case law is legion that the placement of telephone calls constitutes transaction of business in Michigan within the meaning of Michigan's long-arm statute. *Alisoglu v. Central States Thermal King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, *4 (E.D. Mich. 2012) (defendant transacted business in Michigan when its employee(s) communicated with Plaintiffs through e-mail and telephone calls); *Neogen Corp. v. New Gen Screening*, 282 F.3d 883, 888 (6th Cir. 2002) (defendant transacted business in Michigan through mail and web-based contact); *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908 (6th Cir. 1988) (Illinois defendant

"transacted business" in Michigan through mail and telephone contacts with Michigan residents); *Dedvukaj v. Maloney*, 447 F.Supp.2d 813 (E.D. Mich. 2006) (requirements of long-arm statute satisfied where defendant communicated with Michigan plaintiff through email and phone). Defendant Ytel is so involved with the robocalls that Ytel is deemed to have made them.

Additionally, the statute also allows courts to exercise limited personal jurisdiction over any corporation which does or causes "any act to be done, or *consequences to occur*, in the sate resulting in an action for tort." M.C.L. § 600.715(2). (Emphasis added.) Interpreted literally, this means that a non-resident defendant who causes injury to occur within Michigan may be subjected to Michigan jurisdiction even though he has never been within the state or himself done any act physically within the state. *Sifers v. Horen*, 188 N.W.2d 623, 627, 385 Mich. 195, 205 (Mich. 1971). For purposes of this provision, a "tort" in the broad sense is the breach of a noncontractual legal duty owed the plaintiff. *Overby v. Johnson*, 418 F.Supp. 471, 473 (E.D. Mich. 1976). The TCPA is a strict liability statute which imposes liability for erroneous unsolicited calls. *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 894 (E.D. Mich.,2012). Ytel deliberately supplied Michigan telephone numbers to Defendants so that Defendants' illegal robocalls would be more likely to be answered by unsuspecting consumers.

13

Here, Plaintiff have alleged sufficient facts to support the assertion of the long-arm statute at this stage, alleging that the defendants engaged in initiating telemarketing calls using an automated telephone dialing system ("ATDS") to Plaintiff's cellular telephone for the purpose of hawking MJM's "prosperity prophecy". For purposes of their business practices, placing calls constitutes the conducting of "business" for purposes of M.C.L. § 601.715(1); *Alisoglu, supra.* Accordingly, Defendant Ytel purposely transacted "business" in the State of Michigan.

A court disposing of a motion to dismiss for lack of personal jurisdiction does not weigh controverting assertions of party seeking dismissal, because court wants to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing affidavit denying all jurisdictional facts; dismissal on pleadings is proper only if all specific facts which plaintiff alleges collectively fail to state prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to plaintiff and not consider the controverting assertions of defendant. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Plaintiff must make only a prima facie showing of personal jurisdiction

14

in order to defeat dismissal. See *id.*

Because Defendant Ytel is alleged to have engaged in "business" and committed "torts" within the State of Michigan, this court may assert personal jurisdiction over Ytel. For these reasons, the Court should deny the motion.

**E.    Defendant Ytel's alleged conduct in committing violations of the TCPA satisfy constitutional requirements**

The ability to exercise personal jurisdiction arises when the defendant has "minimum contacts" with the forum state so as to not "offend traditional notions of fair play and substantial justice." *International Shoe v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 157 (1945). The Supreme Court reiterated the importance of "affiliation between the forum and the underlying controversy, principal, [an] activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,* 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017). "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy." *Walden v. Fiore,* 134 S.Ct. 1115, 1122 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). Neither the *Bristol* case nor the *Walden* case stand for the proposition that individuals that commit violations in one state can simply retreat to their state. It is not a necessary condition for personal jurisdiction that the defendants be physically present within

15

the jurisdiction. *Knight Capital Partners Corp. v. Henkel AG & Company, KGAA*, 257 F.Supp.3d 853, 862 (E.D. Mich. 2017).

Courts utilize a three-part test to determine personal jurisdiction and its requirements are that: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and, (3) the acts of the defendant of consequences cause by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Within the context of TCPA cases, the same argument being raised by Defendant Ytel has been rejected numerous times. Sending a message into the forum state in violation of the TCPA is sufficient to confer personal jurisdiction over the defendant. *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885 (S.D. Fla. 2013). *See, e.g., Payton v. Kale Realty, LLC*, 2014 WL 4214917, *4 (N.D. Ill. 2014); *Luna v. Shac, LLC*, 2014 WL 3421514, at *4 (N.D. Cal. 2014); *Baker v. Caribbean Cruise Line, Inc.*, 2014 WL 880634, at *2 (D. Ariz. 2014); *Hudak v. Berkley Group, Inc.* 2014 WL 345676, at ** 2-3 (D. Conn. 2014); *Heidorn v. BDD Mktg. & Mgmt.*

16

*Co., LLC*, 2013 WL 6571629 (N.D. Cal. Aug 19. 2013), report and recommendation adopted, 13-CV-00229-YGR, 2013 WL 6571168 (N.,D. Cal. Oct, 9, 2013).

Despite there being no dearth of cases permitting the exercise of long-arm jurisdiction, the Defendants argue that the Court may not exercise that jurisdiction here. Defendants' motion must be denied.

**F.     The individual defendants have purposefully availed themselves of this forum and caused a violation in Michigan.**

To purposefully avail oneself, "a defendant need not be physically present or have physical contacts with the form, as long as its efforts are 'purposefully directed' toward forum residents." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 (1985). A single contact with a forum state may confer personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Vanderberg & Sons Furniture*, 2013 WL 504168, * 4 (W.D. Mich. 2013). Sending fraudulent communications into a forum state constitutes purposeful availment. *Neal v. Janssen*, 2760 F.3d 328, 332 (6th Cir. 2001). The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action. *Id.*

In this case, Plaintiff alleges that the Defendants – including Ytel – "are engaged in, *inter alia*, telemarketing activities utilizing automated telephone dialing

systems and prerecorded voice messages to contact consumers offering to sell prophetic messages and financial miracles which they claim to have received from God." [ECF No. 1-2, Complaint, ¶ 58]. Further, Plaintiff has alleged a civil conspiracy where "[t]he Defendants have joined together and made an agreement to form a partnership or concert of action in which each member becomes the agent or partner of every other member and engage in planning or agreeing to commit some at or aiding and abetting in the furtherance of the overall scheme." [ECF No. 1-2, Complaint, ¶ 74]. Defendant Ytel's participation in the scheme consists of, *inter alia*, their supplying the robocalling platform [ECF No. 1-2, Complaint, ¶ 136], facilitating the illegal spoofing of telephone numbers and blocking of Caller ID of the outbound robocalls and initiating the telephone calls on behalf of the Defendants to consumers, *en masse* [ECF No. 1-2, Complaint, ¶ 137]. The personal liability provisions of the TCPA render this conduct a statutory violation and render them personally responsible for this conduct. In that capacity, the Defendants are responsible for having directed numerous calls to the state of Michigan and specifically to Plaintiff. As such, the Defendants have purposefully availed themselves of the benefits of the state of Michigan to do their telemarketing, and violated the TCPA in the process. Implicitly, the Defendants have purposefully availed themselves and caused a consequence in Michigan in violation of the TCPA.

**G.**   **Defendant Ytel's participation in the civil conspiracy subjects it to the long arm jurisdiction of Michigan**

Michigan recognizes the conspiracy theory of jurisdiction, which is described

as follows:

> "Under the 'conspiracy theory' of jurisdiction, a
> conspirator not within the forum state may be subject to the
> jurisdiction of the forum state on the basis of the acts a
> coconspirator committed there. The rationale for this rule
> is that when one member of a conspiracy inflict an
> actionable wrong in one jurisdiction, the other member
> should not be allowed to escape being sued there by hiding
> in another jurisdiction. A prima facie case of conspiracy
> supporting a finding of personal jurisdiction over a
> nonresident individual may be established by using
> reasonable inferences, provided sufficient evidence is
> introduced to take the inferences out of the realm of
> conjecture, but jurisdiction may not be asserted if the
> person bringing an action against the nonresident fails to
> establish such a prima face case."

*1 Mich. Pl. & Pr.* § 2:33 (2d ed.). See, *e.g.*, *Yoost v. Caspari*, 295 Mich. App. 209,

224-5. 813 N.W.2d 783, 792 (2012). See also, *General Motors Corp. v. Ignacio*

*Lopez de Arriortua*, 948 F.Supp. 656, 665 (E.D. Mich.1996). Because Defendant

Ytel is shown to have participated in the conspiracy, Defendant Ytel should be

subject to long arm personal jurisdiction in Michigan.

**H.**   **Ytel's claim for sanctions is without merit**

Defendant Ytel began its motion with a gratuitous attack upon Plaintiff, and

closed its motion with another personal attack upon Plaintiff. In closing, Ytel asserts

19

that "Plaintiff improperly and frivolously seeks jurisdiction over Ytel in Michigan" and states that it will be seeking sanctions under Fed. R. Civ. P. 11. [ECF No. 6, p. 7].

The central purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).   Rule 11 permits sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Mach. and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir.2010). "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) (emphasis in original).

At the time that Plaintiff signed the Complaint in this matter, Plaintiff did so certifying that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the Complaint: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal

contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and, (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Most importantly, Plaintiff stands behind that certification and that certification remains true and correct.

Courts look with disfavor on a party's use of Rule 11 or the ethical rules as combative tools; the rules governing the ethical conduct of lawyers are far too important to be trivialized and used in baseless mud-slinging. *Autrey v. U.S.*, 889 F.2d 973, 986 (11th Cir. 1989).

## CONCLUSION

For the reasons set forth, *supra*, Plaintiff respectfully requests that this Honorable Court DENY Defendant Ytel, Inc.'s Amended Motion to Dismiss Ytel, Inc. Due to Lack of Personal Jurisdiction.

Respectfully submitted,

Date: November 23, 2020

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *Pro Se*

21

## CERTIFICATE OF SERVICE

I hereby certify that on **November 23, 2020**, I caused copies of the foregoing *Plaintiff's Response in Opposition to Defendant Ytel, Inc.'s Amended Motion to Dismiss Ytel, Inc. Due to Lack of Personal Jurisdiction* to be served upon all parties and/or attorneys of record to the above-captioned cause herein by sending same in a sealed envelope, with first-class postage fully prepared thereupon, and deposited in the United States Mail, addressed as follows:

Emily G. Ladd, Esq.  
Miller Canfield, PLC  
101 North Main Street, 7th Floor  
Ann Arbor, Michigan 48104

Jeffrey S. Hengeveld, Esq.  
Plunkett & Cooney  
38505 Woodward Avenue, Suite 2000  
Bloomfield Hills, Michigan 48304

John A. Hubbard, Esq.  
Hubbard Snitchler & Parzianello PLC  
801 West Ann Arbor Trail, Suite 240  
Plymouth, Michigan 48170

Alexander A. Ayar, Esq.  
McDonald Hopkins PLC  
39533 Woodward Avenue, Suite 318  
Bloomfield Hills, Michigan 48304

Wendy Ekua Dacruz  
16570 Baylis Street  
Detroit, Michigan 48221

I declare under the penalties of perjury that this Certificate of Service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

*Mark W. Dobronski*
_____  
Mark W. Dobronski

# EXHIBIT A

1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    LAURA C. DE LA CABADA, et al.,          Case No. 19-cv-07178-JSC

8                    Plaintiffs,

9              v.                            **ORDER RE: DEFENDANT'S MOTION
                                            TO DISMISS FIRST AMENDED**
10   YTEL, INC.,                            **COMPLAINT**

11                   Defendant.              Re: Dkt. No. 21

12

13         Laura C. De la Cabada and Debra Williams (together, "Plaintiffs") bring this action on

14   behalf of themselves and as a putative class action against Ytel, Inc. ("Ytel" or "Defendant"),

15   alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (Dkt.

16   No. 20.)[1]  Now before the Court is Defendant's motion to dismiss the first amended complaint for

17   failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  After careful

18   consideration of the parties' briefing and having had the benefit of oral argument on March 5,

19   2020, the Court DENIES Defendant's motion because the complaint's allegations give rise to a

20   plausible inference that Ytel is liable under the TCPA.

21                                       **BACKGROUND**

22   I.    **Complaint Allegations**

23         The gravamen of the complaint is that Ytel, "a cloud-based text messaging and calling

24   system," knowingly facilitated millions of illegal robocalls and robotexts by Manasseh Jordan

25   Ministries and Yakim Manasseh Jordan (together, "MJM") that Plaintiffs received without their

26   _____

27   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.
28   [2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (*See* Dkt. Nos. 6 & 11.)

United States District Court
Northern District of California

1  consent. (*See* Dkt. No. 20 at ¶¶ 1-5.)  MJM is "a 'ministry' and evangelizer of the so-called

2  'prosperity gospel'" that "partnered with Ytel" to make the calls and send the texts at issue. (*Id.* at

3  ¶ 5.)  MJM has been "subject to an FCC citation and no fewer than sixteen separate lawsuits since

4  2013," yet continues its calling and text messaging campaigns "in exclusive partnership with, and

5  with the knowing consent and assistance of, . . . Ytel." (*Id.*)  Plaintiffs allege that Ytel thus

6  violated the TCPA by "knowingly permitting and facilitating this conduct to persist, allowing [its]

7  call platform to be used to effectuate this conduct, and by being substantially involved in placing

8  the spam calls and texts Plaintiffs continue to receive to this day." (*Id.* at ¶ 6.)

9        **A.**    **The Ytel Systems**

10       Ytel provides its customers with calling and text messaging systems that constitute

11  "automatic telephone dialing system[s]" and are capable of delivering prerecorded voice messages

12  and text messages to consumers' telephones. (*Id.* at ¶ 22.)  The systems have "the capacity to

13  produce the numbers to be called, using a random or sequential number generator, and to dial such

14  numbers." (*Id.* at ¶¶ 19, 21.)  Ytel's website asserts that its "'in-house carrier compliance team

15  works directly with [its] customers to ensure that they're sending messages and running

16  campaigns that are compliant within the standards set by the FTC and TCPA.'" (*Id.* at ¶ 26

17  (quoting https://ask.ytel.com/ytel-api-sms).)  Despite such oversight, however, "Ytel allowed pre-

18  recorded calls and text messages to be sent without first obtaining prior express consent from

19  customers." (*Id.* at ¶ 28.)

20       Ytel also "directly participates in executing and calling texting campaigns by bypassing

21  carrier filtering and using deceptive calling tactics." (*Id.* at ¶ 29.)  Specifically, Ytel's text

22  messaging system provides "short codes," which are "5 to 6-digit phone number[s]," because they

23  are best used for high volume text messaging campaigns and "are not subject to blocking or

24  filtering by cell phone carriers for heavy volume calling." (*Id.* at ¶ 30 (citing

25  https://ask.ytel.com/hubfs/Product/Sales%20Tools/Infographic/2018_03_ShortCodeInfographic.p

26  df).)[3]  The Ytel system "also allows for the 'spoofing' of outgoing phone numbers to match the

27

28    [3] When considering a Rule 12(b)(6) motion to dismiss, a court ordinarily does not look beyond the four corners of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "A

*United States District Court*
*Northern District of California*

1   recipient's local phone number," which "enables its partners to [e]stablish a local presence by

2   using a phone number that matches your recipients [sic] area code." (*Id.* at ¶ 32 (alterations in

3   original) (internal quotation marks omitted).)

4       **B.   The Communications**

5       "Ytel and its tools played an integral role in spamming of millions of phones with recorded

6   messages and texts featuring automated messages from the so-called 'prophet' Yakim Manasseh

7   Jordan." (*Id.* at ¶ 36.) Ytel provided MJM "with custom short codes to avoid being blocked by

8   recipients' cell phone carriers," and "provided MJM with hundreds of local phone numbers in

9   order to place pre-recorded calls to consumers, en masse, and avoid built-in call blocking

10  features." (*Id.*) MJM "has told millions of call recipients, in his own prerecorded voice[:]

11          the Lord spoke to me personally about you. I must speak to you. I'm

12          going to pass the phone to my blessed assistant and he's [going to]
        give you my blessed number so that you can call me back so that you

13          can hear this blessed word.

14  (*Id.* at ¶ 38 (alterations in original).) "In a Ytel-partnered text messaging campaign, MJM told call

15  recipients that 'GOD is Exposing those that are for you and against you, ALL for YOUR GOOD

16  Listen Click Prophetmanasseh4u.com.'" (*Id.* at ¶ 39.) The recipients of these calls and text

---

18  court may, however, consider certain materials—documents attached to the complaint, documents
incorporated by reference in the complaint, or matters of judicial notice—without converting the

19  motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903,
908 (9th Cir. 2003). Here, the FAC cites among other things, Ytel's website. Defendant asserts

20  that because the FAC "includes selective screenshots from Ytel's website, it is appropriate for Ytel
to refer to, and for this Court to consider, other parts of Ytel's website for a more robust

21  understanding of Ytel's business." (Dkt. No. 21 at 8 n.2.) Not so. At this stage the Court can
only consider the web pages "directly quoted" in the FAC. *See Daniels-Hall v. Nat'l Educ. Ass'n*,

22  629 F.3d 992, 998 (9th Cir. 2010) (taking "into consideration information posted on certain . . .
webpages that [p]laintiffs referenced in the [c]omplaint," because "[p]laintiffs directly quoted the

23  material posted on th[ose] web pages, thereby incorporating them into the [c]omplaint"); *see also
Golden v. Home Depot, U.S.A., Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 WL 2441580, at *3 (E.D.

24  Cal. May 31, 2018) (noting that a complaint's citation to a portion of a website "does not open the
door to [d]efendant's use of unrelated portions of the same website in presenting a motion to

25  dismiss"); *Greg Young Publ'g, Inc. v. CafePress, Inc.*, 2016 WL 6106752, at *2 (C.D. Cal. Jan.
25, 2016) (noting that although complaint quoted portions of defendant's website, "such

26  allegations are not a blanket permission to incorporate unrelated information found elsewhere on
[d]efendant's domain"). Indeed, incorporation by reference is improper than material that "merely

27  creates a defense to the well-pled allegations in the complaint," because such material "does not
necessarily form the basis of the complaint." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

28  988, 1002 (9th Cir. 2018). Accordingly, for purposes of the instant motion the Court considers as
incorporated by reference only those portions of Ytel's website cited in the complaint.

United States District Court
Northern District of California

1    messages "did not consent to be called by Manasseh, MJM, or Ytel." (*Id.* at ¶ 41.)

2           Plaintiffs received prerecorded calls and text messages attributed to MJM as recently as

3    2019.  Plaintiffs "do[ ] not have a relationship with MJM or Ytel," and neither Plaintiff has

4    provided MJM or Ytel with her phone number or given them consent to call her phone. (*Id.* at ¶¶

5    53, 56.)

6           **C.      The *Molitor* Action**

7           Plaintiff De la Cabada was part of a 2016 class action complaint against MJM for violating

8    the TCPA and in March 2019 she "obtained an individual default judgment against Manasseh and

9    MJM" for those violations. (*See id.* at ¶ 45; *see also Molitor, et al. v. Yakim Manasseh Jordan, et

10   al.*, No. 1:16-cv-02106, Order of Default Judgment, Dkt. No. 30 (N.D. Ill. Apr. 29, 2019).)[4]  Ytel

11   was not a party to that action. *See generally Molitor*, No. 1:16-cv-02016, Class Action Complaint,

12   Dkt. No. 11-1 (N.D. Ill. June 20, 2016).  Plaintiff De la Cabada does not bring the instant case

13   "based on any calls that were at issue in the prior case." (Dkt. No. 20 at ¶ 45.)  This case concerns

14   only "texts and calls she received after 2017." (*Id.*)

15          In early 2017, "counsel for Plaintiff De la Cabada provided Ytel with repeat notice of the

16   [*Molitor*] lawsuit, the substance of the allegations, and extensive evidence of the overall conduct

17   of MJM." (*Id.* at ¶ 47.)  Thus, Ytel was aware of MJM's conduct, "[a]t the very least," in early

18   2017. (*Id.*)  Further, "the FCC issued a citation letter to MJM in 2016" for making calls in

19   violation of the TCPA, (*see id.* at ¶ 43 (citing https://www.fcc.gov/document/fcc-issues-citation-

20   manasseh-jordan-robocalls-cell-phones), and "MJM and Manasseh have also been sued for

21   violating the TCPA no fewer than *sixteen times* since 2013 alone," (*id* at ¶ 44).  "[D]espite the

22   perpetual legal action against it for making hundreds of millions of illegal calls and texts, MJM,

23   along with Ytel continues to make harassing pre-recorded calls and sends text messages to

24   consumers without first obtaining their prior express consent." (*Id.* at ¶ 48.)

25   //

26

27   [4] Courts may take judicial notice of "undisputed matters of public record, including documents on
     file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).
28   Accordingly, the Court takes judicial notice of the proceedings in *Molitor, et al. v. Yakim
     Manasseh Jordan, et al.*, No. 1:16-cv-02106 (N.D. Ill.).

4

#### D.     The Putative Class

Plaintiffs bring this action individually and on behalf of two distinct classes of similarly situated individuals: (1) the "Pre-Recorded Voice Class," consisting of "[a]ll persons in the United States who received one or more pre-recorded calls from MJM"; and (2) the "Text Message Class," consisting of "[a]ll persons in the United States who received one or more text messages from MJM." (*Id.* at ¶ 57.)

## II.     Procedural History

Plaintiffs filed their original complaint on October 30, 2019, bringing two TCPA claims against Ytel: (1) violation of 47 U.S.C. § 227(b)(1)(A)(iii) on behalf of Plaintiffs and the Pre-Recorded Voice Class; and (2) violation of same on behalf of Plaintiffs and the Text Message Class. (Dkt. No. 1 at ¶¶ 65-82.)  Defendant moved to dismiss the complaint in December 2019, (Dkt. No. 14), and Plaintiffs filed the first amended complaint ("FAC" or "complaint") on January 16, 2020, (Dkt. No. 20), bringing the same TCPA claims asserted in the original complaint. Defendant filed the instant motion to dismiss two weeks later. (Dkt. No. 21.)  The motion is fully briefed, (*see* Dkt. Nos. 23 & 24), and the Court heard oral argument on March 5, 2020.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient, as is a complaint that "tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted).

## I.     The TCPA

Under section 227(b) of the TCPA it is unlawful for any person in the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or

United States District Court
Northern District of California

5

1    prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47

2    U.S.C. § 227(b)(1)(A)(iii).  "The three elements of a TCPA claim are: (1) the defendant called a

3    cellular telephone number; (2) using an automatic telephone dialing system; (3) without the

4    recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036,

5    1043 (9th Cir. 2012).  A text message falls within the meaning of "to make any call" under the

6    TCPA.  *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), *as*

7    *revised* (Feb. 9, 2016).

8          "For a person to 'make' a call under the TCPA, the person must either (1) directly make

9    the call, or (2) have an agency relationship with the person who made the call."  *Abante Rooter &*

10   *Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4,

11   2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)).  Thus,

12   liability under the TCPA can be either direct or vicarious.  Here, Plaintiffs allege only direct

13   liability; that is, they allege that Ytel "made" the challenged communications.

14          Defendant moves to dismiss the complaint on the grounds that Plaintiffs have not plausibly

15   alleged that Ytel made the communications.  The TCPA does not define the term "make" as used

16   in 47 U.S.C. § 227(b)(1)(A); however, in July 2015, the FCC issued a declaratory ruling setting

17   forth interpretative guidance for determining whether an entity "made" a call for purposes of

18   TCPA liability.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.*

19   *Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Declaratory Ruling"), *rev'd in part on other*

20   *grounds by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).  The FCC "look[s] to the totality of

21   the facts and circumstances surrounding the placing of a particular call to determine: 1) who took

22   the steps necessary to physically place the call; and 2) whether another person or entity was so

23   involved in placing the call as to be deemed to have initiated it[5], considering the goals and

24   purposes of the TCPA."  *Id.* at 7980.

25

26   [5] Plaintiffs allege that Ytel violated 47 U.S.C. § 227(b)(1)(A), which prohibits "making" certain
     calls to cellular telephone numbers.  Section (B), 47 U.S.C.§ 227(b)(1)(B), prohibits "initiating"
27   certain calls to landlines.  The FCC, however, uses "to make a call" and "to initiate a call"
     interchangeably; that is, the terms have the same meaning and legal effect.  *See In the Matter of*
28   *Dialing Servs., LLC*, 29 F.C.C. Rcd. 5537, 5542 n.30 (2014); *Shamblin v. Obama for Am.*, No.
     8:13-CV-2428-T-33 TBM, 2015 WL 1754628, at *4 n.2 (M.D. Fla. Apr. 17, 2015).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court concludes that while Plaintiffs have not plausibly alleged that Defendant

2  *physically* made the communications, they have plausibly alleged that Defendant knowingly

3  allowed MJM to use Ytel's "platform for unlawful purposes" and therefore Ytel "made" the calls.

4  *See* 2015 FCC Declaratory Ruling, 30 FCC Rcd. at 7980-81.

5  **II.     Whether Ytel "Made" the Communications**

6         **A.     Ytel did not Physically Make the Communications**

7         The complaint contains only conclusory allegations suggesting that Ytel physically made

8  the calls and sent the text messages; specifically:

10            Between 2015 and 2017 alone, Ytel and MJM placed over 160 million
              illegal robocalls to consumers around the country.

11            . . .

12            MJM, along with Ytel, continues to make harassing pre-recorded calls
13            and sends text messages to consumers without first obtaining their
              prior express consent.

14            . . .

15            Ytel, together with MJM, placed pre-recorded voice calls to
16            Plaintiffs' and the Class members' cellular telephones without their
              prior express consent.

17            . . .

18            Ytel made pre-recorded voice calls to Plaintiffs' and members of the
19            Class's cellular telephones without obtaining prior express consent.

20            . . .

21            Ytel, together with MJM, sent unwanted and unsolicited text
              messages to Plaintiffs' and the Class members' cellular telephone
22            without their prior express consent.

23            . . .

24            Ytel made text message calls to Plaintiffs' and members of the Class's
              cellular telephones without obtaining express consent.

25  (Dkt. No. 20 at ¶¶ 5, 48, 65, 74, 78.)  These conclusory allegations do not give rise to a plausible

26  inference that Ytel physically made the calls and sent the texts; indeed, the complaint contains

27  multiple allegations that MJM actually made those communications. (*See id.* at ¶¶ 5, 38, 39, 54,

28  79.)  Plaintiffs' opposition does not argue otherwise, and instead asserts that Ytel was so involved

7

1    in the calling and text messaging campaigns as to have initiated them.

2    **B.      Whether Ytel was Otherwise Involved in the Communications**

3    In considering whether an entity was otherwise so involved with a communication as to be

4    deemed to have made it for TCPA liability purposes, the FCC has identified several relevant

5    factors, including: (1) who creates the content of the messages; (2) who decides "whether, when or

6    to whom" a message is sent; (3) "the extent to which a person willfully enables fraudulent

7    spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either

8    functionality to clients"; and (4) "whether a person who offers a calling platform service for the

9    use of others has knowingly allowed its client(s) to use that platform for unlawful purposes." *See*

10   2015 FCC Declaratory Ruling, 30 FCC Rcd. at 7980-81.

11   There are no factual allegations that plausibly support an inference that Ytel created the

12   content of the communications, or determined when, how, and to whom the communications were

13   sent.  Drawing all inferences in Plaintiffs' favor, however, and based on the totality of the

14   circumstances, Plaintiffs still plausibly allege that Ytel was so involved with the communications

15   as to be deemed to have made them.

16   First, Plaintiffs allege that Ytel assists MJM with spoofing of telephone numbers and

17   blocking of Caller ID. (Dkt. No. 20 at ¶¶ 34 ("Ytel provides random selections of numbers for

18   bulk purchase."), 35 (alleging that with such phone numbers "telemarketers can place multiple

19   phone calls, each from a different number, to avoid built-in phone number blocking systems," and

20   "[e]ven if a consumer blocks one phone number, calls can continue unabated from hundreds of

21   other numbers"), 36 ("Ytel provided MJM hundreds of local phone numbers in order to *place* pre-

22   recorded calls to consumers, *en masse*, and avoid built-in call blocking features.") (emphasis

23   added).)

24   Second, Plaintiff De la Cabada obtained a default judgment against MJM in the *Molitor*

25   lawsuit, six months prior to the filing of this action.  (*Id.* at ¶ 45.)  Plaintiffs allege that "counsel

26   for Plaintiff De la Cabada provided Ytel with repeat notice of the [*Molitor*] lawsuit, the substance

27   of the allegations, and extensive evidence of the overall conduct of MJM." (Dkt. No. 20 at ¶ 47.)

28   Plaintiffs also allege that MJM has been sued for TCPA violations 16 times since 2013 and was

1   cited by the FCC in 2016 "for making calls using an automatic telephone dialing system or an

2   artificial or prerecorded voice without first obtaining prior express consent of the caller." (Dkt.

3   No. 20 at ¶¶ 43, 44.) While Plaintiffs do not allege that they gave Ytel notice of these 16 other

4   lawsuits and the 2016 FCC action, or of the default judgment itself, the complaint plausibly

5   supports an inference that Ytel would have been aware of them given that Ytel advertises that its

6   "in-house carrier compliance team works directly with our customers to ensure they're sending

7   messages and running campaigns that are compliant and within the standards set by the FTC and

8   TCPA." (*Id.* at ¶ 26 (quoting https://ask.ytel.com/ytel-api-sms).) In other words, given Ytel's

9   advertised interest in ensuring its customers' TCPA compliance, the allegations support a

10   reasonable inference that once Ytel was put on notice that its customer had been accused of

11   violating the TCPA, it would have investigated whether there have been other lawsuits or actions

12   taken against the customer, at a minimum by asking the customer itself so that Ytel could ensure

13   that past mistakes are not repeated.

14        In sum, drawing all reasonable inferences in Plaintiffs' favor, the totality of the allegations

15   support a plausible inference that Ytel was aware of MJM's repeated TCPA violations and

16   nonetheless continued to facilitate them by offering MJM Ytel's platform, including with spoofing

17   and call blocking functionality.

18        Defendant's citation to *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044 (S.D. Cal. 2015),

19   does not counsel a different result. There, the court on summary judgment rejected the plaintiff's

20   argument that the defendant "had actual notice of an illegal use of its service and failed to take

21   steps to prevent that use" based on the defendant's receipt of the complaint in that action and

22   related cases. 141 F. Supp. 3d at 1049. The court stated that "[a] complaint is an allegation of an

23   illegal act, not notice of an illegal act," and noted that one of the complaints had been voluntarily

24   dismissed. *Id.* at 1049-50. The court found that "[a]n allegation of illegal activity that is

25   subsequently withdrawn serves more to disprove than to prove the illegal nature of the activity,

26   and such an allegation is certainly insufficient to qualify as notice that would give rise to TCPA

27   liability." *Id.* at 1050. The court further found that the plaintiff did not show that the defendant

28   "received a notice from the FCC regarding illegal activity or other comparable notice." *Id.* Thus,

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the court determined that the plaintiff failed to demonstrate that the defendant "had sufficient

2   notice of any illegal activity to render it an active participant in that activity." *Id.*

3       *Kauffman* is distinguishable. First, it was decided on summary judgment where the issue

4   was whether the evidence supported a reasonable inference of actual notice. Here, in contrast, the

5   question is whether the allegations support a reasonable inference of actual notice. For the reasons

6   stated above, they do. Moreover, the subsequent default judgment against MJM in the *Molitor*

7   action constitutes MJM's admission of facts alleged in the complaint in that action and established

8   MJM's liability. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Thus, unlike

9   the defendant in *Kauffman*, Ytel did not merely have notice of *allegations* of MJM's illegal

10  activity; MJM's default in that action established its liability and Plaintiffs' allegations support a

11  plausible inference that Ytel would have been aware of that liability.

12      Defendant's insistence that it is a common carrier and thus exempt from TCPA liability is

13  of no moment. Defendant has not identified any authority holding that a common carrier cannot

14  be held liable under the TCPA even if it has been found to have been so involved in the unlawful

15  communications that it can be deemed to have made them. Indeed, the authority is to the contrary.

16  *See, e.g., Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal.

17  July 12, 2017) (noting that "[c]ommon carriers are not liable under the TCPA *absent* a high degree

18  of involvement or actual notice of an illegal use and failure to take steps to prevent such

19  transmissions") (emphasis added) (internal quotation marks and citation omitted).

**CONCLUSION**

21      For the reasons set forth above, the Court DENIES Defendant's motion to dismiss.

22     This Order disposes of Docket No. 21.

23  **IT IS SO ORDERED.**

24  Dated: March 10, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

10

# EXHIBIT B

## US DISTRICT COURT
## Eastern District of Texas

| | |
|---|---|
| ) | Craig Cunningham |
| ) | Plaintiff, Pro-se |
| ) | |
| ) | v.          Civ Action      4:19-cv-00494 |
| ) | |
| ) | Manasseh Jordan Ministries, Inc., et al |
| ) | Defendants. |

### Plaintiff's  Subpoena Instructions to Ytel, inc

My name is Matt Grofsky and I am making this affidavit as the custodian of records for Ytel, Inc.

Based on my knowledge of Ytel's business records practices and procedures, the enclosed records are a true and correct copy of the original documents kept by Ytel in the ordinary course of business.

Based on my knowledge of Ytel's business records practices and procedures, the records were made at or near the time of occurrence of the matters set forth in the records by, or from, information transmitted by a person with knowledge of those matters.

It is the regular practice of Ytel to make such a record of transactions and customer records in the ordinary course of business.

Additionally, in response to the subpoena, we have identified a customer of record and business records which have been produced in response:

Account number 18307,

Company Name: Manasseh Jordan Ministries

Account Created 2013-02-21

Current Status: Active

Account Owner Information

Name: Yakim Jordan

Address: 17121 Collins Ave., Sunny Isles Beach, Fl. 33160

Phone: 845-598-9974

email: fj@prophetmanasseh.com

**Documents Produced**

We have attached the requested call records from account 18307 to the numbers requested in the subpoena,

Excel filed titled "SUPT 15517- CompanyID 18307-CDR to 3 Numbers.csv",

all caller ID's associated with account 18307, Excel filed titled "SUPT 15517- CompanyID18307-Numbers.csv",

and billing transactions associated with account 18307, Excel file titled "SUPT 15517- CompanyID 18307-Transactions.csv"

These attachments are included as excel spreadsheets.

I declare under the penalty of perjury that the foregoing is true and correct.

Date 4/29/2020

By

Matt Grofsky, CTO

```
2292802972
2295898722
2292878973
2292878951
2295161136
2292878979
2292792988
2292802970
2292802973
2316424651
2316424670
2316424671
2315332166
2315332167
2315332168
2315332169
2315332174
2315332326
2315332455
2313838189
2313838085
2313838177
2313838187
2313838189
2315987680
2314977058
2312162715
2312162716
2312162083
2312162717
2312162718
2312162719
2312511976
2312517086
2312511784
2312511961
2312517466
2312511893
2312517092
2312445030
2312664244
2312664628
2314036267
2314036327
2314036432
2342240094
2342240095
2342240096
```

MICHIGAN

231

(36)

2402038138
2402038209
2402038219
2402038364
2402038681
2402065057
2402240825
2402495724
2402573029
2402573650
2402190450
2402190484
2402190503
2402190501
2402190491
2402615983
2402615955
2402190345
2402190348
2402615743
2402615984
2402615254
2402615258
2402615795
2483081008
2483081201
2486171952
2486171953
2486212955
2486212960
2486212961
2486212973
2486212983
2486212984
2486212986
2486212989
2486212993
2486213001
2483096773
2482976988
2483096634
2483010314
2483081947
2483096873
2483081783
2488265959
2488598788
2488598726

MICHIGAN
248
(27)

2488265840
2488265841
2488265863
2494935712
2494935713
2494935701
2495016546
2495025425
2494935693
2492005794
2519295116
2519295117
2519295125
2519295131
2515171595
2515171721
2513024740
2513024743
2513024747
2513024748
2513024749
2513024681
2513024751
2513024750
2513024758
2513024759
2513024761
2513024762
2512503972
2512503965
2512503971
2512503922
2512503952
2513024763
2513024764
2513178769
2513178732
2513178598
2513178490
2512571006
2512571693
2512504983
2512504985
2512558371
2526535199
2526310596
2526310599
2526310600

2622988846
2622988847
2622791878
2622791207
2622791892
2622791869
2622791224
2622791932
2622988849
2622988855
2622988857
2622988859
2622988862
2622053720
2623948930
2623948642
2623948645
2623948671
2678510339
2673693612
2673693613
2673693614
2673693615
2673693617
2673693618
2677035373
2673697190
2678638658
2673699611
2673693620
2673693621
2673693622
2673693623
2673693625
2673693626
2674359696
2673666599
2673825280
2674359652
2674359443
2674359477
2674359920
2674818470
2674818471
2674818478
2692249184
2695589002
2695589013

2695589024
2695589026
2695589027
2695589029
2697750107
2695589050
2695589054
2695589065
2697270704
2692341273
2692184084
2692371508
2692186804
2692186865
2692186863
2692186832
2692186790
2692186794
2692186782
2692184416
2692184417
2692186525
2703923260
2704952201
2704952636
2704952863
2704952878
2704952879
2704952881
2704952886
2704952914
2704952970
2705946685
2705946687
2702125803
2702125689
2702251362
2702251430
2702251392
2702251445
2702251398
2702251446
2702494688
2702494669
2702136924
2702494702
2702494691
2702494676

MICHIGAN

269

(25)

3132094787
3132640075
3132640119
3132640140
3132640186
3133343137
3133070058
3133070060
3133070176
3132640206
3132640207
3132640208
3133799751
3133568605
3133799950
3134268674
3132515976
3133562990
3138554827
3138554808
3135185677
3138554786
3138554818
3133063596
3133063697
3133511934

MICHIGAN
313
(26)

3146668290
3146668335
3146668478
3146668657
3146668852
3146668855
3146668881
3144498287
3144498291
3144499934
3146668881
3146261772
3146261773
3146261774
3146261780
3146261782
3146261784
3145263041
3143806518
3144398435
3145977762
3145977688

5162669491
5165885778
5165885796
5178275536
5177971045
5178269033
5178269090
5178269095
5178269098
5178269103
5178269109
5172588112
5172588113
5178274858
5178263095
5178263111
5178269033
5178269090
5172588066
5172588081
5172588112
5172588113
5172450146
5172450183
5172451636
5172966939
5172966969
5172966957
5173058875
5173058772
5172966965
5172966253
5172966442
5172966475
5189523147
5189523189
5182175198
5182176131
5182495239
5182545636
5182545921
5182546292
5182825430
5186148986
5186148872
5184605938
5184605946
5184605956

MICHIGAN
517
(31)



5853804825
5853804848
5866360036
5862104650
5866849963
5867840716
5866849920
5867840927
5863712396
5863712405
5863712406
5872062111
5872062113
5872062124
5872098114
5872105033
5872094311
5872086936
5872069214
6012815434
6012034793
6018820976
6016025655
6016025666
6016025738
6016025755
6016025761
6016025773
6012078275
6012078275
6016025761
6016025762
6016025771
6016025773
6016025774
6016025783
6012078275
6012587243
6012587332
6013858745
6013858751
6013858422
6013858430
6013858433
6026380980
6023549103
6027268722
6027268725

MICHIGAN
586
(9)

6137033386
6137033407
6137066825
6137066843
6137066845
6137066841
6137066840
6138012899
6138012933
6138012959
6145160331
6145160427
6145160430
6145160431
6143828115
6143636559
6143636533
6143796319
6143500874
6143500927
6143449408
6157579035
6157579105
6157579109
6157579137
6157579138
6157579214
6157579307
6154420421
6154420416
6152194996
6152357946
6153029801
6155704784
6162151075
6162151099
6162151105
6162151107
6162151184
6162151270
6162151277
6162151339
6165125698
6167948617
6162014187
6162014173
6162014168
6162014195

MICHIGAN
616
(20)

```
6163696987
6163695415
6163696949
6163694842
6163695595
6163695610
6178616287
6178616293
6172131356
6178616344
6178616344
6173707011
6173707125
6173707126
6175449509
6175455394
6175454016
6174851842
6174851933
6174851818
6174851904
6173028266
6173137685
6174339552
6186901274
6186901344
6186901350
6186901358
6186901360
6186901498
6186901513
6186901495
6186901511
6186901513
6184374150
6184374151
6184374155
6184374156
6184374157
6184374159
6184374160
6184374161
6184374162
6182022242
6182022296
6182022310
6182324465
6182324351
```

7325203937
7326837565
7326837629
7326837631
7342744091
7344180606
7344180627
7344360433
7343910048
7343910083
7348699122
7343910048
7343910053
7343910077
7343910083
7343910086
7343910117
7343910145
7342287145
7342287101
7344104047
7344104028
7344104005
7343467951
7342753088
7343467495
7343467528
7372005658
7372005659
7372018536
7372005847
7372018814
7372018731
7372018527
7372212004
7372212109
7372142298
7372210144
7372210289
7372210468
7402181743
7402242919
7402174029
7402171565
7402181735
7402171362
7402932733
7402932581

MICHIGAN
734
(23)

8077007681
8077007694
8077007702
8077007703
8077007722
8077007728
8077009048
8077009054
8077009061
8077902073
8077902101
8077007641
8077007657
8077007668
8087973154
8086640183
8086640190
8086640192
8086640206
8086640208
8086640217
8086644726
8087252573
8084005911
8084005913
8084005944
8084006019
8084278343
8086987806
8087934576
8084685006
8086987878
8083761678
8087934546
8084278955
8084278958
8084279120
8105806035
8105806101
8105806107
8103686022
8103686026
8102132264
8102132263
8102120942
8102120972
8102120959
8102120955

MICHIGAN
810

19

8102169438
8102120951
8102169429
8102559969
8102559982
8102026921
8102128905
8102128912
8124184622
8124184769
8125655134
8125655135
8122005812
8122130011
8122130085
8122130941
8122132284
8122132640
8122137262
8122137454
8122137596
8122137928
8122139051
8122139147
8122139238
8122212378
8122966296
8123044625
8123044613
8123044441
8123044637
8123044495
8123044609
8122966372
8122966523
8123044034
8137378242
8137378014
8137378549
8133302171
8134731473
8133310358
8139404249
8139404246
8139404221
8139404257
8139404207
8133365857

9034003460
9034003501
9045418044
9045418051
9045418054
9045418074
9045418091
9046859079
9046859184
9045075818
9042672568
9042672569
9042672570
9042672571
9044744603
9042672573
9042672574
9044744717
9042672575
9042672577
9042672578
9042672579
9045525984
9042672581
9044744852
9044744151
9046003781
9044744886
9045525975
9042672582
9042672583
9043414107
9042046188
9043376871
9043261568
9042046720
9043414132
9044671766
9043414909
9045305010
9043418909
9043418912
9043418927
9045872967
9064775227
9064775295
9069144543
9069346198

9069346211
9069346257
9069346300
9069346312
9069346784
9064514711
9066291506
9062124050
9064286059
9064286350
9064514711
9062054689
9062054837
9062054971

MICHIGAN
906
(18)

9072751222
9072751226
9083681037
9083684732
9084241058
9084241074
9083081196
9083369813
9082661521
9085302605
9085302542
9085303373
9085303379
9085303519
9092702471
9092702471
9095391898
9092450873
9092450874
9092450876
9092527204
9092527207
9093181684
9093181593
9092527210
9092527215
9092527221
9092544776
9092544834
9092544877
9092570533
9092702612
9092458062
9092226263

9402677328
9402677351
9402832410
9402832213
9402832093
9402832248
9402677296
9402677703
9402677734
9412512539
9418459512
9412132341
9412173340
9412201250
9412201284
9412201314
9412201318
9412132310
9412295096
9412201161
9412295973
9412295960
9417699535
9417699572
9412147325
9412147331
9412295975
9415843647
9415843657
9416986852
9472012542
9472012520
9472012596
9472012476
9472002565
9472002899
9472002566
9472012384
9472002409
9472095421
9472095404
9472095090
9472095448
9472002525
9472003002
9472003081
9472095287
9492021247

MICHIGAN
947

(17)

9842550401
9842550582
9842550588
9843298082
9845385159
9842057854
9842171517
9842071427
9842057730
9842057746
9842176643
9842176548
9842176450
9842057850
9842176140
9842176167
9856851649
9856851678
9856851703
9856851718
9856851757
9856851768
9856851698
9856851705
9856851758
9856851760
9856851766
9856851768
9852289950
9852360366
9852289902
9852391585
9852391613
9852504843
9852513274
9852502890
9852513232
9852513189
9852504755
9852504772
9852504941
9895736010
9893159004
9898898063
9898898064
9898898065
9892143552
9892143856

9892143900
9892440489
9892440966
9892829304
9892823390
9893341843
9893341844
9893341847
9893341848
9893341850
9893341857
9892008340
9892008349
9892038751
9892008183
9892038788
9892038729
9892008140
9892038743
9892038848
9892038773
9892038728
9892008193
9892008171
9892038484
9892038537
9892038572

MICHIGAN
989
(34)

